Argued and submitted February 10, judgment on plaintiff's whistleblower and wrongful-discharge claims reversed and remanded, otherwise affirmed October 21, 2015

Timothy L. HALL,
*Plaintiff-Appellant,*

*v.*

STATE OF OREGON;
Oregon Youth Authority,
a Department of the State of Oregon;
Karen Daniels; and Ken Jeske,
*Defendants-Respondents.*

Marion County Circuit Court
12C18206; A156103

366 P3d 345

Kevin T. Lafky argued the cause for appellant. With him on the briefs were Daemie M. Kim and Lafky & Lafky.

Carolyn Alexander, Assistant Attorney General, argued the cause for respondents. With her on the brief were Ellen F.

Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Ortega, Presiding Judge, and DeVore, Judge, and Garrett, Judge.

DEVORE, J.

**DEVORE, J.**

Plaintiff filed a report to police alleging that he had been poisoned on the job at the MacLaren Youth Correctional Facility. After finding that plaintiff had not been poisoned, the Oregon Youth Authority (OYA) discharged him. OYA did so, at least in part, because it believed that plaintiff had filed a false report with police. Plaintiff responded with civil claims against OYA, among others, for violations of Oregon's whistleblowing statutes, common-law wrongful discharge, and a denial of his civil rights to due process under 42 USC section 1983. The trial court granted defendants' motion for summary judgment on the whistleblowing and wrongful discharge claims on the basis that plaintiff failed to demonstrate that his report was objectively reasonable. Rejecting the due process claim, the court ruled that plaintiff had notice and an opportunity to be heard. Plaintiff appeals. Without written discussion, we affirm the trial court's order of summary judgment on plaintiff's due process claim, and, as to plaintiff's remaining claims, we reverse and remand.

"We take the following facts from the summary judgment record, viewing the facts and all reasonable inferences that may be drawn from them in the light most favorable to plaintiff, as the nonmoving party." *Oregon Steel Mills, Inc. v. Coopers & Lybrand, LLP*, 336 Or 329, 332, 83 P3d 322 (2004).

Plaintiff, an employee at the MacLaren Youth Correctional Facility, was working in the visiting center as youth offenders began reporting for their visiting time. He brought a sealed bottle of Vitamin Water, a sweetened beverage, to drink during his shift. When he opened the bottle, he did not notice any foreign substances in the liquid. About that time, a security employee asked plaintiff to process incoming youth offenders in another area of the building. Plaintiff left his partially consumed bottle of Vitamin Water unattended where he had been stationed. After processing the youth offenders, plaintiff returned to drink the remaining Vitamin Water. As he drank, plaintiff felt a hard "foreign substance" in the liquid. He spit out the substance into his hand, saw what he believed to be a partially dissolved white pill, and suspected that someone had poisoned

him. Plaintiff showed the bottle to three OYA employees, and at least two of those employees believed that they saw a "crushed" or "dissolving pill" in the bit of remaining fluid at the bottom of the bottle. A third employee described seeing "sediment."

In plaintiff's experience, it was "not uncommon for offenders and visitors to try to harm OYA employees." He wrote that he was poisoned in a Youth Incident Report, but he refused initially to give the drink bottle to another OYA employee. Some hours later, he left to go to the Salem Hospital, bringing the bottle with him and hoping to have the foreign substance tested. Plaintiff described that he felt sleepy, dizzy, and disoriented.[1] He provided the hospital a urine sample, which yielded an "unconfirmed positive" for the presence of barbiturates and cannabinoids.[2] Plaintiff believed that the lab results proved that someone had poisoned him. About 20 minutes after receiving the test results, plaintiff filed a report with police detailing the incident, alleging an assault and contraband in a youth facility. *See* ORS 163.160 (fourth-degree assault); ORS 162.185 (supplying contraband).

A later review of a recording from a security camera revealed that no one, in fact, had touched or tampered with plaintiff's drink bottle. Although plaintiff believed that he had been poisoned, he watched the recording and agreed that no one had tampered with the bottle.

OYA investigated plaintiff, mailed a pre-dismissal notice, held a pre-dismissal meeting, and terminated his employment. In its dismissal letter, OYA declared that plaintiff had violated the drug-free workplace policy by testing positive for unlawful substances, "violated multiple agency policies and procedures by alleging a 'poisoning incident,'" and "provided false and/or misleading information to management during an investigation and pre-dismissal meeting."

---

[1] Plaintiff later declared, in his response to defendants' motion for summary judgment, that his vision had become blurry, he had felt unstable, and he had felt like he lost his balance and coordination.

[2] Plaintiff later said that a prescription medication he occasionally took for migraine headaches contained barbiturates.

Plaintiff filed a civil complaint alleging violations of several whistleblowing statutes, ORS 659A.199,[3] ORS 659A.203,[4] and ORS 659A.230,[5] common-law wrongful discharge, and a claim for violation of due process rights under 42 USC section 1983. Defendants moved for summary judgment on all of plaintiff's claims. As to plaintiff's whistleblowing claims, defendants argued that plaintiff had "failed to meet the objective reasonableness test required under Oregon whistleblower laws." As to plaintiff's wrongful discharge claim, defendants argued that plaintiff failed to establish a wrongful discharge because he had not shown that he was "engaged in an activity of public importance when terminated." Instead, defendants insisted, he was discharged for making a false report.

Plaintiff responded that whether a poisoning had actually occurred was immaterial, because his report to police could have been based on a reasonable, "good faith mistake" and that he had "had an objectively reasonable belief that the poisoning incident constituted a violation of law." He contended that a question of fact remained for the jury because, although no juror "might view the tape and believe he'd been poisoned, * * * that doesn't mean that he didn't report what he believed to be a poisoning in good faith." Plaintiff asserted that whether he had a reasonable

---

[3] ORS 659A.199(1) provides that

"[i]t is an unlawful employment practice for an employer to discharge * * * or retaliate against an employee with regard to promotion, compensation or other terms, conditions or privileges of employment for the reason that the employee has in good faith reported information that the employee believes is evidence of a violation of a state or federal law, rule or regulation."

[4] In part, ORS 659A.203(1) provides that it is an unlawful employment practice for a public employer to

"(b) Prohibit any employee from disclosing, or take or threaten to take disciplinary action against an employee for the disclosure of any information that the employee reasonably believes is evidence of:

"(A) A violation of any federal or state law, rule or regulation by the state, agency or political subdivision[.]"

[5] ORS 659A.230(1) provides that

"it is an unlawful employment practice for an employer to discharge * * * or in any manner discriminate or retaliate against an employee with regard to promotion, compensation or other terms, conditions or privileges of employment for the reason that the employee has in good faith reported criminal activity by any person * * *."

and good faith belief in support of his report to police presented a credibility question for the jury to resolve. With regard to the wrongful discharge claim, plaintiff argued that he "performed the important public duty of reporting a crime occurring in the youth corrections facility to protect himself, his co-workers, and the youth offenders."

The trial court appeared to adopt defendants' standards by which to assess the several claims. The court explained,

"Well, I did read all the materials and I * * * examined the video myself. And it seems as if every legal test kept coming back to objective reasonableness. And as I view the evidence that's attached to this motion, I would have to rule that no reasonable juror observing this evidence could rule for the plaintiff. And I would have to rule that it is not objectively reasonable, and I don't see this as protected activity. It is not objectively reasonable on wrongful discharge, given the tape and the observation.

"And I do agree with defendants' arguments on the whistleblowing wrongful discharge, as well as the due process claim, that there was a notice/opportunity to be heard. And even though there is argument about whether or not it was an effective ability to be heard, I do find that the defendant has presented appropriate arguments that are persuasive to the court."

The trial court granted defendants' motion for summary judgment.

On appeal, plaintiff reasserts his argument that his whistleblowing claims under ORS 659A.199 and ORS 659A.230 require only that an employee make a report in subjective, good faith belief about unlawful activity, and that, in this case, plaintiff had made the report in good faith because he believed that he had been poisoned. For purposes of ORS 659A.203, plaintiff recognizes a different standard and contends that "plaintiff must have 'an objectively reasonable belief' that the reported conduct, if proved, would violate a statute." On that claim, he contends, he has met that objective standard.

Defendants disagree, in part, with plaintiff's understanding of the pertinent standards, asserting that all *three*

whistleblower statutes require that an employee's report of criminal activity be objectively reasonable and that plaintiff's report was not objectively reasonable under the circumstances of this case.

"Summary judgment is proper if the 'pleadings, depositions, affidavits, declarations and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Love v. Polk County Fire District*, 209 Or App 474, 476, 149 P3d 199 (2006) (quoting ORCP 47 C).

"No genuine issue as to a material fact exists if, based upon the record before the court viewed in a manner most favorable to the adverse party, no objectively reasonable juror could return a verdict for the adverse party on the matter that is the subject of the motion for summary judgment."

ORCP 47 C.

Our first task is to address the parties' dispute over the standards involving the three whistleblowing provisions—ORS 659A.199, ORS 659A.203, and ORS 659A.230. Loosely speaking, those whistleblowing statutes prohibit employers from retaliating against an employee as a result of the employee's report of certain improper activities. Whether the employee is protected depends upon an assessment of the employee's good faith or reasonableness attendant to that report. Contrary to defendants' suggestion, those standards for that assessment are not the same in all three statutes.

Two statutes do have comparable terms, but they do not turn on whether the report was objectively reasonable. Under ORS 659A.199, an employer acts unlawfully when taking adverse action against an employee "for the reason that the employee has in good faith reported information that the employee believes is evidence of a violation of a state or federal law, rule or regulation." That provision turns on whether the employee has reported in good faith based on what the employee believes is evidence of unlawful activity. Under ORS 659A.230, an employer acts unlawfully when taking adverse action against an employee, among other reasons, "for the reason that the employee has in good faith reported criminal activity by any person[.]" Although

the provision does not refer expressly to the employee's belief, it, too, turns on whether the employee, in good faith, has reported unlawful activity. In ensuing cases, we have construed such statutory language as asking whether the employee had subjective, good faith in making the report.

In *Jensen v. Medley*, 170 Or App 42, 53-54, 11 P3d 678 (2000), *rev'd in part on other grounds*, 336 Or 222, 82 P3d 149 (2003), we considered ORS 659A.230, then numbered as ORS 659.550. The trial court instructed the jury that it was unlawful for an employer to take adverse action against an employee who in good faith reported criminal activity. The employer objected that it was error to have gone on to tell the jury that "'[t]he employee is not required to prove that a crime did occur.'" *Id.* at 53. The employer argued that the eventual proof that there was no crime might bear on the employee's good faith in making the report. We disagreed. To explain, we quoted the trial court's instruction, which, in part, advised that good faith means that the plaintiff "acted out of good faith concerning the criminal activity rather than out of malice, spite, jealousy, or personal gain." *Id.* at 54 (emphasis omitted). We concluded that "[w]hether the report of suspected criminal activity 'may *later* be proved to have been legitimate or not'" was irrelevant. *Id.* (emphasis in original). Under ORS 659A.230, good faith relates to what the employee knew at the time of the report, not to what might be shown later to be reasonable with the benefit of hindsight.

A common law case on wrongful discharge compared a similar whistleblowing statute, ORS 659A.233,[6] and, in so doing, it suggests how ORS 659A.199 and ORS 659A.230 might be understood. In *McQuary v. Bel Air Convalescent Home, Inc.*, 69 Or App 107, 684 P2d 21, *rev den*, 298 Or 37 (1984), this court found ORS 659A.233 to be an expression of public policy that supported protecting an employee from wrongful discharge. Among other things, that whistleblowing statute protected a nursing home employee who "has in good faith reported possible violations." ORS 659A.233.

---

[6] ORS 659A.233 was previously numbered ORS 659.035. We refer to the current version of the statute because the statute was renumbered and no substantial changes were made.

Paralleling that statutory standard, "we concluded that the plaintiff's wrongful termination claim required her *only* to show that she believed in good faith that the incident of abuse occurred." *Love*, 209 Or App at 490 (summarizing *McQuary*) (emphasis added).

No reported, state-court decision construes the good faith standard in ORS 659A.199, but there is no reason to distinguish it from the good faith standard in ORS 659A.230, as introduced in *Jensen*, or the good faith standard in ORS 659A.233, as compared in *McQuary*. Indeed, ORS 659A.199 is more express insofar as it refers to an employee's good faith reporting of information that the employee "believes" is evidence of unlawful activity. Reference to the employee's belief indicates a subjective, good faith standard. An Oregon federal court has already foreseen this conclusion. *Neighorn v. Quest Health Care*, 870 F Supp 2d 1069, 1102 (D Or 2012) (construing ORS 659A.199 to require only an employee's subjective good faith belief).

Only one of the three statutes, on which plaintiff relies, is a whistleblowing claim that imposes a standard of objective reasonableness. That is plaintiff's claim for a violation of ORS 659A.203. Unlike the other statutes, ORS 659A.203 is addressed specifically to public employers. It prohibits adverse action against a public employee "for the disclosure of any information that the employee *reasonably* believes is evidence" of a violation of law by an agency.[7] (Emphasis added.) In *Love*, we distinguished the terms in ORS 659A.203 from the good faith standard of ORS 659A.233 discussed in *McQuary*. Logically, the same distinction could just as well be made today between "reasonable belief" in ORS 659A.203 and the good faith standard in ORS 659A.199 and ORS 659A.230. We observed in *Love* that "[t]he contrast" between the statutes' standards "is striking." 209 Or App at 492. We agreed with the defendant that,

---

[7] Plaintiff characterizes the agency impropriety as involving contraband in a correctional facility and poisoning of a correctional employee. Because the parties confine their arguments to the question whether a subjective or objectively reasonable belief is required by ORS 659A.203, we express no opinion on whether an offender or visitor poisoning plaintiff's drink would be evidence of "[a] violation of any federal or state law, rule or regulation *by the \*\*\* agency \*\*\**." ORS 659A.203(1)(b)(A) (emphasis added).

under ORS 659A.203, the plaintiff must have had an objectively reasonable belief that the public entity had engaged in unlawful conduct. *Id.* at 490. We explained that

> "the legislature intended that the 'threshold' for the generality of public employee whistleblower claims be different, and more demanding, than with respect to whistleblowing claims based on reports of patient abuse."

*Id.* at 492. Public employees are protected only for *"objectively reasonable* 'whistleblowing.'" *Id.* (emphasis in original). Thus, in the end, only one of plaintiff's three whistleblowing claims requires an objectively reasonable basis for the report based on information known to the employee at the time of the claim.

Turning to the evidence, we conclude that plaintiff presented evidence to create a genuine issue of material fact that he acted with subjective, good faith for purposes of ORS 659A.199 and ORS 659A.230 and that he had an objectively reasonable belief for purposes of ORS 659A.203 that someone had tampered with his bottle. There is evidence on summary judgment that plaintiff left his beverage unattended in a youth offender facility. While the bottle remained unattended, both youth offenders and their visitors were present in the building. Reportedly, it was "not uncommon for offenders and visitors to try to harm OYA employees." When plaintiff took a drink from the beverage, he believed that he felt a hard foreign substance in his mouth, spat out the substance, and saw a dissolving white pill. He said that he began to feel specific, physiological symptoms including disorientation, fatigue, and loss of balance after drinking the beverage and fearing a foreign substance in the bottle. Plaintiff demonstrated his concern by seeking medical care. He presented the bottle to three other OYA employees. Two of those employees believed that there was a substance resembling a crushed or dissolved pill in the bottom of the bottle.[8]

Such evidence could support a finding of a subjective, good faith belief as well as an objectively reasonable

---

[8] The record does not contain reference to the contents of Vitamin Water ordinarily or in this particular bottle.

belief, based on what plaintiff then knew. As we observed in *Jensen,* "[w]hether the report of suspected criminal activity 'may *later* be proved to have been legitimate or not' is, indeed, irrelevant." 170 Or App at 54 (emphasis in original). Plaintiff agrees that a videotape shows his beverage to have been untouched, but that hindsight does not defeat the subjective, good faith or objective reasonableness of the report that he was poisoned, given what he knew at the time. As a consequence, the trial court erred in dismissing the three whistleblower claims.

Plaintiff's final claim, asserting a wrongful discharge, requires a similar conclusion because the court dismissed for a similar reason. A claim of wrongful discharge must be premised upon a discharge because the employee was fulfilling an important societal obligation or was pursuing a job-related right that reflects an important public policy. *See, e.g., Delaney v. Taco Time Int'l,* 297 Or 10, 681 P2d 114 (1984) (discharge for refusing to defame another employee); *Brown v. Transcon Lines,* 284 Or 597, 588 P2d 1087 (1978) (discharge for filing a workers' compensation claim). Although plaintiff insisted that he had stated such a claim, defendants' challenge was narrower. Defendants argued that plaintiff had no such claim because there is no public importance or public duty in making a *false* report. Defendants argued that, because the report was not objectively reasonable, plaintiff could have no wrongful discharge claim.[9]

On that basis, the trial court concluded, as a matter of law, that plaintiff did not make an objectively reasonable police report, given the hindsight provided by the video recording. We have concluded, however, that plaintiff presented evidence sufficient to create a question of fact as to the objective reasonableness of his report. Moreover,

---

[9] Defendants have not developed an argument that, regardless whether plaintiff had good faith in making a police report, plaintiff's claim for wrongful discharge failed because reporting criminal activity in this instance did not fulfill an important societal obligation or involve a job-related right implicating an important public policy. *Compare McManus v. Auchincloss,* 271 Or App 765, 353 P3d 17 (2015) (reversing dismissal of wrongful discharge claim involving report of crime of child pornography) *with Babick v. Oregon Arena Corp.,* 333 Or 401, 40 P3d 1059 (2002) (affirming dismissal of wrongful discharge claim involving arrests or attempted arrests for crimes of assault, drug, and alcohol possession).

plaintiff's subjective, good faith report suffices for a wrongful discharge claim. *McQuary*, 69 Or App at 111-12. Defendants have not established, as a matter of law, that plaintiff could not have held a subjective, good faith belief at the time of that report. For that reason, the trial court erred in dismissing the wrongful discharge claim.

Judgment on plaintiff's whistleblower and wrongful-discharge claims reversed and remanded; otherwise affirmed.