Argued and submitted April 26, reversed and remanded December 29, 2016

Mary Elizabeth HARPER,
an individual,
*Plaintiff-Appellant,*

*v.*

MT. HOOD COMMUNITY COLLEGE,
*Defendant-Respondent.*

Multnomah County Circuit Court
130912777; A158174

388 P3d 1170

Margaret H. Leek Leiberan argued the cause and filed the opening brief for appellant. With her on the reply brief was Jensen & Leiberan.

Peter R. Mersereau argued the cause for respondent. On the answering brief were Thomas W. McPherson and Mersereau Shannon LLP.

Before Duncan, Presiding Judge, and DeVore, Judge, and Flynn, Judge.

**DEVORE, J.**

Plaintiff appeals from a judgment dismissing her claims against defendant, Mount Hood Community College (MHCC), based on the Oregon Public Employee Whistle-blower Law, ORS 659A.203.[1] Plaintiff alleged in her complaint that she was discharged in retaliation for reporting violations of state and federal laws, mismanagement and misuse of funds, and violations of internal policies and procedures. The trial court granted defendant's motion for summary judgment on the basis that plaintiff failed to show evidence to create a genuine issue of material fact, when confronted with defendant's evidence denying any causal connection between plaintiff's reports and her termination. *See* ORCP 47 C ("The adverse party has the burden of producing evidence on any issue raised in the motion as to which the adverse party would have the burden of persuasion at trial."). We conclude that the trial court erred in granting defendant's summary judgment motion. Therefore, we reverse and remand.

## I. FACTS

In reviewing an order or a motion for summary judgment, we state the facts in the light most favorable to the nonmoving party, drawing all reasonable inferences in her favor. ORCP 47 C; *Jones v. General Motors Corp.*, 325 Or 404, 420, 939 P2d 608 (1997). Plaintiff is the nonmoving party. "Accordingly, where the record could reasonably support either party's version of events, we state the facts as described by plaintiff." *Huber v. Dept. of Education*, 235 Or App 230, 232, 230 P3d 937 (2010).

Plaintiff was employed at MHCC as its labor relations director and affirmative action officer from October 2011 until July 2012. After she was terminated, plaintiff filed this action alleging violations of ORS 659A.203.

Defendant moved for summary judgment, arguing that plaintiff's expected work in labor relations and

---

[1] ORS 659A.200 and ORS 659A.203 were amended in 2016, effective January 1, 2017, but, those amendments are immaterial to the issue on appeal. *See* Or Laws 2016, ch 73, §§ 1-4 (2016). For ease of reference, throughout the opinion our reference is to those new versions of the statutes.

affirmative action should not be seen as grounds for a claim. Defendant offered evidence that plaintiff was terminated, not for her reports, but because she was a probationary employee who, despite remedial efforts, performed poorly, used poor judgment, and developed poor working relationships with others.

In response, plaintiff submitted a declaration and exhibits. Plaintiff declared that her work included investigating complaints made against MHCC employees and ensuring compliance with local, state, and federal laws. She explained that she reported to her direct supervisor, Farver, a vice-president of MHCC, as well as to Hay, the president of the college. Plaintiff listed nine incidents that she investigated and reported between November 2011 and April 2012. Those incidents included age discrimination, food stamp fraud, procurement fraud, bullying and harassment, and misuse of funds. Plaintiff included copies of email messages and letters that she sent to Farver and Hay regarding her concerns of violations of labor and discrimination laws, as well as bullying and intimidation behavior by MHCC employees.

Initially, plaintiff felt supported by Farver and Hay in resolving a backlog of labor issues and discrimination complaints. Three months into her work, plaintiff sensed tension developing between herself and staff in Human Relations. Farver called a meeting to clarify the roles of plaintiff and others, but the tension continued.

Plaintiff noticed other changes. Plaintiff declared that, in February and March 2012, she experienced indifference and hostility from Farver. She recalled, "I felt that I was being discouraged by Mr. Farver from disclosing what I believed to be violations of state and federal law and violations of MHCC policies." She believed that she was excluded from meetings that she had previously attended. Some of her job duties were reassigned. Farver and Hay did not appear to take her reports of violations seriously, and they no longer supported her in resolving certain labor relations issues.

Plaintiff recounted that, because both Farver and Hay refused to address her concerns, she went over their heads and started reporting violations to MHCC board

member Yates. After receiving reports from plaintiff between April and May 2012, Yates contacted the Secretary of State's office, which conducted an investigation into various issues. Thereafter, plaintiff perceived that her relationship with her supervisors deteriorated further.[2]

In March and again in April 2012, Farver presented plaintiff with a memorandum of expectations about her job performance. Plaintiff acknowledged that the document was "allegedly designed to address my shortcomings." In June 2012, Farver sent a performance assessment to Hay that included negative comments gathered from people involved in plaintiff's investigations. He recommended that her employment be terminated. Both Farver and Hay participated in the decision. On July 25, 2012, plaintiff received a termination letter.

The trial court granted defendant's motion for summary judgment. The court determined,

> "Plaintiff's burden at the summary judgment stage in a case of this type is minimal. Nevertheless, I conclude that plaintiff has not produced sufficient evidence for her claims to survive summary judgment. There is insufficient evidence that the termination decision had any causal connection to activities or status that might meet requirements for statutory protection. An objectively reasonable juror could not return a verdict for plaintiff without drawing an inference about causation that is unsupported by the record before the court."

On appeal, plaintiff contends that she submitted sufficient evidence to create a genuine issue of fact that she was terminated in retaliation for reporting to her supervisors and to a board member about violations of state and federal law, mismanagement and misuse of funds, and violations of MHCC policies.

On appeal, defendant makes two arguments—one legal, one factual. First, defendant contends that plaintiff could not have been engaged in "protected activity" under ORS 659A.203 because she was merely doing her job to

---

[2] Farver declared that he did not know that plaintiff had reported alleged problems to Yates.

report problems. That is, defendant asserts that plaintiff was not a true whistle-blower.[3] Second, defendant contends that, in general, plaintiff's declaration contained vague statements that are insufficient to create a dispute of fact. In one particular, defendant argues that, because Farver was unaware that plaintiff reported violations to board member Yates, plaintiff could not have been discharged for making that report.

## II. LAW

### A. *Whistleblower Protection*

Defendant's first argument challenges the application of the whistleblower statute in plaintiff's novel circumstances. That argument requires an interpretation of ORS 659A.203. As always, when interpreting a statute, we start with a review of the statutory text and context. *See State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009) ("[T]here is no more persuasive evidence of the intent of the legislature than the words by which the legislature undertook to give expression to its wishes." (internal quotation marks omitted)); *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-11, 859 P2d 1143 (1993) (text and context are considered in the first level of analysis). If text and context are plain, and if no legislative history is offered to show otherwise, as happens here, the court need go no further. *See State ex rel Dept. of Human Services v. Rardin*, 338 Or 399, 407, 110 P3d 580 (2005) ("If the legislature's intent is clear from the text and context of the statute, then further analysis is unnecessary.").

The whistleblower statute that pertains to public employees and employers provides, in relevant part:

---

[3] Defendant also argues that ORS 659A.203 does not include disclosures of violations of mere policies. That argument, however, was not one of the issues raised in defendant's summary judgment motion. *See Putnam v. Angelozzi*, 278 Or App 384, 387 n 2, 374 P3d 994 (2016) (explaining that when defendant raised a new argument for the first time in his reply memorandum "[t]hat argument did not provide a basis for summary judgment because defendant did not move for summary judgment on that ground, and petitioner was never afforded an opportunity to address it."); *Two Two v. Fujitec America, Inc.*, 355 Or 319, 326, 325 P3d 707 (2014) ("Parties seeking summary judgment must raise by motion the issues on which they contend they are entitled to prevail as a matter of law."). Therefore, we express no opinion on the merits of defendant's argument about reporting violations of policy.

"(1) \* \* \* [I]t is an unlawful employment practice for any *public or nonprofit* employer to:

"\* \* \* \* \*

"(b) Prohibit any employee from disclosing, or *take* or threaten to take *disciplinary action* against *an employee for the disclosure* of any information that the employee reasonably believes is evidence of:

"(A) A violation of any federal, state or local law, rule or regulation by the public or nonprofit employer;

"(B) Mismanagement, gross waste of funds \* \* \*[.]"

ORS 659A.203. (Emphases added.) In turn, a "public employer" is defined to include any political subdivision of the state and any person authorized to act on behalf of that political subdivision. ORS 659A.200(6). And, an "employee" is defined to include "a person [e]mployed by or under contract with the state or any agency of a political subdivision in the state." ORS 659A.200(2)(a).

On its face, the statute applies to protect any "employee" of any political subdivision of the state. The parties do not dispute that MHCC is a public employer and that plaintiff is an employee of MHCC. As written, the statute does not provide an exception for an employee whose work routinely includes disclosure of "information that the employee reasonably believes is evidence" of a violation of law, mismanagement, or gross waste of funds. The statutes reveal that the legislature knows how to create an exception to the term "employee." For example, in the introductory provisions of chapter 659A, one subsection specifies that an "'[e]mployee' does not include any individual employed by the individual's parents, spouse or child or in the domestic service of any person." ORS 659A.001(3). In this circumstance, however, the legislature did not create an exception for a labor relations director or affirmative action officer. The court cannot create such an exception by implication, because the court cannot insert words into ORS 659A.203. *See* ORS 174.010 (The court is "not to insert what has been omitted, or to omit what has been inserted[.]").

The defendant has not offered any legislative history to support its construction of the statute. And, the text

of the statute does not suggest that legislative history would aid our interpretation. *See Suchi v. SAIF*, 238 Or App 48, 55, 241 P3d 1174 (2010), *rev den*, 350 Or 231 (2011) ("Even assuming that the legislative history supported claimant's interpretation, we are required not to construe a statute in a way that is inconsistent with its plain text."). Given the unqualified meaning of an "employee" of a "public employer," we find no justification to construe the whistleblowing statute to provide less protection for those employees whose job may involve routinely reporting on matters that coincide with matters within the scope of ORS 659A.203. Therefore, we reject defendant's argument that the statute could not or should not apply to plaintiff.[4]

B. *Causal Connection*

Defendant's second argument is that plaintiff was terminated for poor relationships and poor job performance, not whistleblowing. To assess that argument, we return to the elements of ORS 659A.203. As relevant here, that statute provides that it is unlawful for (1) a public employer (2) to take or threaten to take disciplinary action against an employee (3) for the disclosure (4) of any information that the employee reasonably believes is evidence of a violation of state, federal, or local law, mismanagement, or gross waste of funds. To deny that defendant took disciplinary action against plaintiff "for" her disclosures is to put at issue defendant's motivation for termination. That is a simple factual question about causation—a question assessed in the context of a motion for summary judgment.

"Summary judgment is proper 'if the pleadings, depositions, affidavits, declarations and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

---

[4] Defendant argues that our construction of ORS 659A.203 should be guided by *Nelson v. Prima Community College*, 83 F3d 1075 (9th Cir 1996). *Nelson* observed that an affirmative action officer does not "receive *special* protection under Title VII" and that she could be disciplined like any other employee. *Id.* at 1082 (internal quotation marks omitted; emphasis added). *Nelson* did not take away the protection that Title VII afforded that plaintiff. Rather, *Nelson* upheld a determination on summary judgment that the cause of her termination was not retaliation. Instead, the plaintiff had been insubordinate and issued orders beyond her authority.

matter of law.'" *Love v. Polk County Fire District*, 209 Or App 474, 476, 149 P3d 199 (2006) (quoting ORCP 47 C). We have "described a plaintiff's burden in an employment discrimination case as being so minimal that it is virtually impervious to a motion based on evidentiary insufficiency" and that, "after a plaintiff has presented evidence of discrimination, evidence of an employer's nondiscriminatory motive in terminating an employee will not support summary judgment." *Williams v. Freightliner, LLC*, 196 Or App 83, 93, 100 P3d 1117 (2004) (internal quotation marks omitted). In the context of similar retaliation claims, we have observed that, to show causation, a "plaintiff must prove that defendant's unlawful motive was a substantial factor in his termination, or, in other words, that [the plaintiff] would have been treated differently in the absence of the unlawful motive." *LaCasse v. Owen*, 278 Or App 24, 32-33, 373 P3d 1178 (2016).

Generally, to determine whether there is a causal connection, we examine the knowledge of plaintiff's reports by the supervisor responsible for plaintiff's discharge and the timing of that discharge—when considering whether a reasonable juror could infer that defendant had a retaliatory motive in discharging plaintiff. *See Medina v. State of Oregon*, 278 Or App 579, 591-92, 377 P3d 626 (2016) (considering whether plaintiff presented evidence that the employer who fired him was aware of the plaintiff's allegedly protected activity); *Huber*, 235 Or App at 241-42 (reversing grant of summary judgment on whistleblower claim in part due to close temporal proximity between the plaintiff's complaints to his employer and the employer's termination of the plaintiff).

To show that her discipline was "for" her reporting, plaintiff bases a causal link on evidence of the reports that she made to Farver and Hay, the deterioration in her relationship with those supervisors, and the timing of her termination by those supervisors. Viewing the evidence in the light most favorable to plaintiff, we agree that a reasonable juror could infer a causal connection between plaintiff reporting to her supervisors and her termination by those same supervisors. That inference could reasonably be based

on her supervisors' knowledge of such reports, and her supervisors' behavioral shifts, their subsequent criticism, and her eventual discharge.[5]

As for the supervisors' knowledge of her complaints, plaintiff's declaration includes a list of incidents that she investigated and reported to Farver and Hay that constitute disclosure of information described in ORS 659A.203(1)(b). From this list—which includes the types of violations, the date on which the investigation or report occurred, and to whom plaintiff reported—jurors could reasonably infer that plaintiff's supervisors were aware of her reports of violations or other concerns.

As for timing, the adverse events occurred in the wake of plaintiff's reports to her supervisors. Plaintiff sensed behavioral shifts in her supervisors during the period that she investigated and reported. Plaintiff declared that she was excluded from meetings that she had previously been attending, that some of her job duties were reassigned, and that Farver and Hay no longer supported her in resolving certain labor relations issues. By February 2012, plaintiff experienced indifference and hostility from Farver and declared, "I felt that I was being discouraged by Mr. Farver from disclosing what I believed to be violations of state and Federal law and violations of MHCC policies."

In March 2012, after plaintiff had made reports, Farver sent her a memorandum of expectations about her job description. Plaintiff described the memorandum as "allegedly designed to address my shortcomings." In April 2012, after reporting other violations, Farver again sent plaintiff the memorandum of expectations. In June 2012, plaintiff received a negative evaluation compiled by Farver and approved by Hay, which provided the basis for her termination. According to plaintiff, that performance evaluation contained negative statements from five officials whom she had investigated in recent months. Given the temporal proximity between plaintiff's reports and her termination, a

---

[5] Because we conclude that a reasonable juror could infer a causal connection between plaintiff's termination and her reporting to Farver and Hay, we need not consider defendant's argument that Farver was unaware of plaintiff's reports to board member Yates.

reasonable juror could infer that plaintiff's supervisors disciplined her "for" her unwelcome disclosures.

For those reasons, we conclude that the trial court erred in granting defendant's motion for summary judgment on plaintiff's claim. There was a genuine issue of material fact. It remains for a jury to determine whether plaintiff's termination was in reaction to disclosures protected by ORS 659A.203 or, instead, was the result of probationary status, poor relationships, and poor performance.

Reversed and remanded.