Argued and submitted May 5, 2016, affirmed September 7, 2017, petition for review denied February 1, 2018 (362 Or 482)

Rebecca FOLZ,
*Plaintiff-Appellant,*

*v.*

STATE OF OREGON,
acting by and through the
Oregon Department of Transportation,
public bodies; and
Donna Sandoval Bennett,
*Defendants-Respondents,*

*and*

Kathryn LOGAN,
John Kroger, and Clyde Saiki,
*Defendants.*

Marion County Circuit Court
11C14781; A158016

404 P3d 1036

William D. Stark argued the cause and filed the briefs for appellant.

Judy C. Lucas, Assistant Attorney General, argued the cause for respondents. With her on the brief were Ellen F. Rosenblum, Attorney General, and Paul L. Smith, Deputy Solicitor General.

Christine N. Moore and Landye Bennett Blumstein LLP filed the brief *amicus curiae* for Oregon Trial Lawyers Association.

Before Ortega, Presiding Judge, and Lagesen, Judge, and Garrett, Judge.

## GARRETT, J.

Plaintiff filed a civil complaint against defendants, alleging violations of several whistleblowing statutes, ORS 659A.199, ORS 659A.203,[1] and ORS 659A.230.[2] Plaintiff claimed that defendants engaged in a series of retaliatory employment actions against her for reporting possible violations of disability discrimination laws in the course of her employment with the Oregon Department of Transportation (ODOT). The trial court dismissed all of plaintiff's claims on summary judgment and entered a general judgment in favor of defendants. Plaintiff appeals, assigning error to the grant of summary judgment. For the reasons set out below, we conclude that the trial court did not err, and we affirm.

We state the facts in the light most favorable to plaintiff, the nonmoving party, and draw all reasonable inferences in her favor. ORCP 47 C; *Huber v. Dept. of Education*, 235 Or App 230, 232, 230 P3d 937 (2010).

Plaintiff was employed as a human resources manager for ODOT. Plaintiff reported to Mark Coolican, who, in turn, reported to the newly appointed Deputy Chief of Central Operations, Clyde Saiki. During the first few months in his position, Saiki conducted an assessment of the department during which some serious concerns were raised about Coolican, and, to a lesser extent, about plaintiff.

In her role, plaintiff supervised and advised human resources managers in ODOT's five regions, including a manager named Burleigh. In February 2010, an employee in Burleigh's district, "Mr. A," told his coworkers that he was experiencing side effects from a prescription medication; however, Mr. A later admitted that he had been intoxicated at work. Mr. A's manager reported the incident to Burleigh, who drafted a "last chance" agreement for

---

[1] ORS 659A.203 was amended in 2016, effective January 1, 2017. *See* Or Laws 2016, ch 73, § 4. Although that amendment is immaterial to the issues on appeal, throughout this opinion, all references are to the 2010 version of that statute.

[2] Plaintiff also alleged a claim for intentional interference with an economic relationship (IIER), which was dismissed on summary judgment. On appeal, plaintiff does not argue that the dismissal of her IIER claim was in error.

Mr. A.[3] Burleigh submitted the draft agreement for approval to two other employees, Makalea and Smith, who then contacted plaintiff to express their concerns about moving forward in the absence of any investigation into whether, for example, Mr. A had a medical condition that required him to take prescription medication.

Plaintiff, Burleigh, Smith, Makalea, and Mr. A's manager participated in a conference call to discuss how to proceed. Plaintiff expressed her opinion that a "last chance" agreement was premature, "extreme," and might place the agency "at risk" unless and until Burleigh first conducted an investigation and interviewed Mr. A. Plaintiff reiterated her concerns in a subsequent call with the same group, and she also followed up with an email on February 26, 2010, suggesting that a more appropriate response would be to employ "normal progressive discipline." In those three communications, although plaintiff expressed concerns about proceeding with the "last chance" agreement, she did not opine that doing so would be "illegal." Later, in her deposition, plaintiff testified that, if it turned out that Mr. A did have a disability and was terminated, Burleigh's plan "could have been illegal," and that it was "a big unknown" given the lack of investigation. Although the record is somewhat unclear on exactly what happened next,[4] plaintiff later learned that both Coolican and Saiki had agreed that plaintiff's proposal was the better way to handle the situation.

Approximately two months later, on April 28, 2010, Coolican was terminated, and plaintiff was told that she was being reassigned to the ODOT "Human Resources, Employment, Training, and Diversity Unit." Although plaintiff's compensation and benefits remained unchanged, plaintiff's new position required her to relocate to a new building and to report to an individual who plaintiff considered to be a "colleague." Pursuant to ORS 240.570(4), on May 20, 2010, plaintiff appealed her reassignment to the Employment Relations Board (ERB). However, in January

---

[3] None of the parties on appeal explains what the proposed "last chance" agreement entailed, but we infer from the context that it provided for termination or another serious sanction in the event that Mr. A committed a future violation.

[4] According to defendants' brief, Mr. A had another incident involving intoxication and resigned from his position in lieu of termination.

2011, Saiki reinstated plaintiff to her original position, and plaintiff eventually dropped her ERB appeal.

Plaintiff subsequently filed this action, alleging multiple violations of Oregon's whistleblowing laws. Broadly speaking, plaintiff alleged that she had been retaliated against for having disclosed information—regarding the agency's handling of Mr. A's situation—that plaintiff believed to be evidence of violations of disability discrimination laws, contrary to ORS 659A.203(1)(b)(A) (making it an unlawful employment practice for any public employer to prohibit an employee from disclosing "any information that the employee reasonably believes is evidence of" a violation of law) and ORS 659A.199 (making it an "unlawful employment practice for an employer to discharge, demote, suspend or in any manner discriminate or retaliate against an employee * * * for the reason that the employee has in good faith reported information that the employee believes is evidence of" a violation of law). Specifically, plaintiff alleged that her reassignment was a disguised attempt to permanently remove her from her position for having reported possible violations of law. Plaintiff also asserted that defendants violated ORS 659A.230, which prohibits employers from discriminating or retaliating against an employee for the reason that the employee "has in good faith brought a civil proceeding against an employer." Plaintiff argued that her appeal to the ERB constituted a "civil proceeding," and that defendants had engaged in a series of retaliatory acts against her for having filed that appeal.

The trial court granted defendants' motion for summary judgment and dismissed all of plaintiff's claims. As to plaintiff's claims under ORS 659A.203(1)(b)(A) and ORS 659A.199, the trial court observed that, as a human resources manager, plaintiff's job duties necessarily "included providing human resources advice and management for various divisions within ODOT." The court thus reasoned that plaintiff had not engaged in protected "whistleblowing" activity by merely performing her job responsibilities. Alternatively, the court reasoned that plaintiff had failed to raise a genuine issue of material fact as to whether she was reassigned *because* of the concerns that she had expressed with respect to the handling of Mr. A's case. With respect to plaintiff's

claim under ORS 659A.230, the trial court, relying on our decision in *Huber*, concluded that the protections in ORS 659A.230 do not apply to complaints made to administrative bodies. *See Huber*, 235 Or App at 238 (holding that the plaintiff's complaint and threat to complain to administrative agencies were "administrative matters" that did not constitute criminal or civil actions, and were therefore not protected by ORS 659A.230).

As far as we can tell, on appeal, plaintiff generally reasserts the arguments that she made to the trial court.[5]

Summary judgment is appropriate when there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. ORCP 47 C. "No genuine issue as to a material fact exists if, based upon the record before the court viewed in a manner most favorable to the adverse party, no objectively reasonable juror could return a verdict for the adverse party * * *." *Id.* To defeat summary judgment, plaintiff was required to produce evidence creating a factual dispute as to all dispositive issues raised in defendants' motion for which plaintiff would have had the burden of persuasion at trial. *Two Two v. Fujitec America, Inc.*, 355 Or 319, 324-26, 325 P3d 707 (2014).

We begin with plaintiff's claims under ORS 659A.203 and ORS 659A.199.[6] ORS 659A.203(1) provides, in pertinent part, that it is an unlawful employment practice for any public employer to:

"(b)   Prohibit any employee from disclosing, or take or threaten to take disciplinary action against an employee

---

[5] Our review of plaintiff's claims is hampered by plaintiff's failure, on appeal, to (1) specify where in the record we may find support for many of her factual contentions, (2) limit her arguments to the legal issues implicated by the appeal, and (3) identify the specific provisions of the various whistleblowing statutes that plaintiff alleges were violated.

[6] At the outset, we reject plaintiff's contention that defendants "admitted" in their pleadings that plaintiff had engaged in protected conduct by reporting violations of Oregon's disability laws. The trial court rejected plaintiff's interpretation, finding instead that defendants merely acknowledged the fact that plaintiff had engaged defendants in a discussion regarding the advisability of the proposed conduct with respect to Mr. A ("I don't read the defendants' answer as widely as the plaintiff does as an admission that the plaintiff engaged in protected activity but that * * * [in context], there's a discussion going on."). We agree with the trial court's interpretation.

for the disclosure of any information that *the employee reasonably believes is evidence of*:

"(A)   A violation of any federal, state or local law, rule or regulation by the public or nonprofit employer[.]"[7]

(Emphasis added.) For purposes of that statute, "disclosures" include "reports of wrongdoing within an agency or department." *Bjurstrom v. Oregon Lottery*, 202 Or App 162, 169, 120 P3d 1235 (2005); *see id.* at 169 (observing that, "[i]n common usage, the term 'disclose' may be understood to mean * * * 'to make known' or to 'open up to general knowledge.'" (Quoting *Webster's Third New Int'l Dictionary* 645 (unabridged ed 2002).)). Similarly, under ORS 659A.199(1),

"[i]t is an unlawful employment practice for an employer to discharge, demote, suspend or in any manner discriminate or retaliate against an employee with regard to promotion, compensation or other terms, conditions or privileges of employment for the reason that *the employee has in good faith reported information that the employee believes is evidence of a violation* of a state or federal law, rule or regulation."

(Emphasis added.) Unlike ORS 659A.203, which requires an objectively reasonable belief that the public entity has engaged in unlawful conduct, ORS 659A.199 requires only a subjective, good-faith belief that the reported information is evidence of unlawful activity. *Hall v. State of Oregon*, 274 Or App 445, 451-54, 366 P3d 345 (2015).

In this case, the question is whether, by expressing her concerns regarding the propriety of the proposed plan with respect to Mr. A, plaintiff engaged in activities that entitle her to protection under ORS 659A.203(1)(b)(A) and ORS 659A.199. We conclude that she did not. That is so for the simple reason that none of the actions for which plaintiff claims to have been retaliated against qualify as "disclosures" or "reports" of information that plaintiff believed to be "evidence" of a "violation" of law.

---

[7] We note that, although both plaintiff's complaint below and briefing on appeal contain only broad references to ORS 659A.203, the record suggests that plaintiff's claim under that statute was limited to conduct described in ORS 659A.203(1)(b)(A). On appeal, we limit our review accordingly.

Viewed in the light most favorable to plaintiff, the evidence is that, in the course of several discussions regarding an ongoing personnel issue, plaintiff—a human resources manager—expressed opinions regarding the appropriate way to resolve that issue, and specifically communicated her disagreement with Burleigh's proposal to issue a "last chance" agreement without first conducting an investigation and employing "normal progressive discipline." At the time of those discussions, no decision had been reached as to how the situation would be handled; that was the point of involving plaintiff in the discussions.

Plaintiff contends that her actions were the "very kind of discussion" that the whistleblowing statutes are meant to protect. Plaintiff, however, offers no support for her contention that a "disclosure" or "report" under ORS 659A.203(1)(b)(A) or ORS 659A.199 may consist of an employee's expression of views or rendering of advice about alternative courses of action in the ordinary course of the employee's job. Put another way, plaintiff fails to explain how her recommendation, made in the course of her regular work duties as a human resources professional, rises to the magnitude of either a "disclosure" or "report" of *wrongdoing*. *See generally Bjurstrom*, 202 Or App at 171 (concluding that none of the plaintiff's disclosures fell within the types enumerated in ORS 659A.203(1)(b)(A) where, despite making general references to the defendant's violation of rules, the plaintiff failed to "identify with any particularity * * * what rules [defendant] supposedly violated").

To be clear, we do not mean to suggest that individuals who are employed in positions that require participation in decisions regarding legal compliance are exempt from, or are entitled to less protection under, Oregon's whistleblowing laws. We recently addressed that issue in *Harper v. Mt. Hood Community College*, 283 Or App 207, 208-09, 216, 388 P3d 1170 (2016), in which we held that a genuine issue of material fact existed as to whether the plaintiff's termination from her job—which included investigating complaints against college employees and ensuring compliance with the law—was in retaliation for her protected disclosures. In that case, the evidence showed that the plaintiff had made

reports of nine incidents involving "age discrimination, food stamp fraud, procurement fraud, bullying and harassment, and misuse of funds" by employees. *Id.* at 209. We rejected the defendant's argument that the plaintiff could not have been engaged in "protected activity" because she was merely doing her job by reporting problems, and we concluded that ORS 659A.203 does not provide an exception for an employee whose work routinely includes disclosure of, or reporting on, "matters that coincide with matters within the scope of ORS 659A.203." *Id.* at 211-13.

The difference between this case and *Harper* is that plaintiff has failed to produce any evidence that she ever made a report that any violation or wrongdoing had occurred. Viewing the record in the light most favorable to plaintiff, the most she has established is that she gave advice about an evolving personnel matter as part of her day-to-day responsibilities as a human resources professional and that she expressed those opinions to other participants in that decision-making process *as part of that process.* Such conduct is neither a "report" nor a "disclosure" of wrongdoing.

In short, we conclude that plaintiff could not prevail on her whistleblowing claims under ORS 659A.203 and ORS 659A.199 as a matter of law, and, therefore, the trial court did not err by dismissing them on summary judgment.

We turn to plaintiff's claim under ORS 659A.230. Again, that statute makes it an unlawful employment practice for an employer to

"discharge, demote, suspend, or in any manner discriminate or retaliate against an employee with regard to promotion, compensation or other terms, conditions or privileges of employment for the reason that the employee * * * has in good faith brought a *civil proceeding* against an employer[.]"

ORS 659A.230(1) (emphasis added.). As previously noted, the trial court, relying on *Huber*, dismissed plaintiff's claim under ORS 659A.230 on the ground that that statute does not apply to administrative proceedings. *See Huber*, 235 Or App at 238 ("The critical flaw in plaintiff's position is that his complaint to the [Department of Health and Human

Services] and threat to complain to the [Oregon State Board of Nursing] were administrative matters—not criminal or civil actions—and were therefore not protected by ORS 659A.230."); *see also Mantia v. Hanson*, 190 Or App 36, 41 n 3, 77 P3d 1143 (2003), *rev den*, 336 Or 615 (2004) (because the relevant statute protects only civil or criminal complaints, a plaintiff's complaint about "allegedly unsafe work conditions" and threat to complain to Oregon occupational safety authorities about those conditions was not protected).

Plaintiff argues, variously, that *Huber* was wrongly decided or is factually distinguishable from this case. In support of her first argument, plaintiff points to OAR 839-010-0140, an administrative rule promulgated by the Oregon Bureau of Labor and Industries, which defines "civil proceeding" under ORS 659A.230 to include "a proceeding before an administrative agency or a court."

We need not reconcile the discrepancy between *Huber* and OAR 839-010-0140 because, even if we were to agree with plaintiff that ORS 659A.230 encompasses administrative proceedings such as plaintiff's ERB appeal, defendants are still entitled to judgment as a matter of law.

Although it is far from clear, plaintiff's claim under ORS 659A.230 appears to be based on a series of purportedly retaliatory acts, including (1) plaintiff's initial reassignment; (2) the denial of certain training to plaintiff that is required for plaintiff to perform her job duties; (3) communications instructing plaintiff to return various ODOT materials, including supervisor files, which plaintiff had taken and stored in her garage following her reassignment; and (4) a March 2011 letter to plaintiff explaining that, during the pendency of her ERB appeal and tort action, she would be temporarily screened from "all duties or meetings and any interactions involved with evaluating, assessing and strategizing potential and actual ODOT employee litigation against the Department." For various reasons, none of that evidence would support a verdict in plaintiff's favor.

As a matter of simple chronology, plaintiff's reassignment—which occurred *before* plaintiff initiated the ERB appeal challenging that decision—cannot be the basis

for plaintiff's retaliation claim under ORS 659A.230 for having initiated the ERB appeal. *See, e.g., Ramsey v. City of Philomath*, 182 F App'x 678, 680 (9th Cir 2006) ("Where the decision to take an adverse employment action is made prior to any protected activity, no factfinder could find the requisite causal link between the employment action and the protected conduct."). So too with plaintiff's contention that she was denied the necessary training to perform her job duties; the only discernible evidence in the record with respect to any such "denial" is an email dated May 7, 2011, briefly stating that plaintiff would not be involved in "approving payment documents, travel claims or signing time sheets" and therefore did not need to receive such training. Because that decision predates plaintiff's ERB appeal, no reasonable factfinder could infer that defendants withheld training in response to plaintiff having brought the appeal.

Furthermore, on appeal, plaintiff fails to develop any argument as to how any of the remaining actions taken by defendants—including the communication instructing plaintiff to return ODOT property and letter screening plaintiff from certain ODOT matters pending the resolution of her legal actions against ODOT—amount to adverse action against her for purposes of ORS 659A.230. In the absence of a developed argument, we decline to further address plaintiff's arguments under ORS 659A.230. *Cf. Beall Transport Equipment Co. v. Southern Pacific*, 186 Or App 696, 700 n 2, 64 P3d 1193, *adh'd to on recons*, 187 Or App 472, 68 P3d 259 (2003) ("[I]t is not this court's function to speculate as to what a party's argument might be. Nor is it our proper function to make or develop a party's argument when that party has not endeavored to do so itself.").

Affirmed.