ARMSTRONG, J.
*722 Plaintiff appeals a general judgment dismissing on summary judgment his claims for fraud, breach of fiduciary duty, and violation of the Oregon Racketeering Influence and Corrupt Practices Act (ORICO) against defendants Ticor Title Company of Oregon and Fidelity National Title Group, Inc.[1] Defendants cross-appeal from a supplemental judgment that denied their request for attorney fees. We affirm on the cross-appeal without written discussion. On appeal, plaintiff raises five assignments of error to the trial court's grant of summary judgment to defendants. We summarily reject plaintiff's argument that the law of the case doctrine applied to prior rulings of the trial court so as to prevent the trial court from later granting defendants' motion for summary judgment. See, e.g. , ILWU, Local 8 v. Port of Portland , 279 Or. App. 157, 164, 379 P.3d 1172, rev. den. , 360 Or. 422, 392 P.3d 321 (2016) (explaining that law of the case doctrine "gives preclusive effect only to the prior ruling or decision of an appellate court (as opposed to a trial court or administrative body)" (emphasis in original) ). In addition, because we conclude that plaintiff did not present evidence sufficient to create a genuine issue of material fact that he suffered damages resulting from defendants' alleged tortious actions, we affirm.[2]
On appeal from the trial court's grant of defendants' motion for summary judgment, we state the facts in the light most favorable to the nonmoving party, here plaintiff, and draw all reasonable inferences in plaintiff's favor. ORCP 47 C; Harper v. Mt. Hood Community College , 283 Or. App. 207, 208, 388 P.3d 1170 (2016). We limit our discussion of the facts to those that are relevant to the issue of damages in this case.
Plaintiff sought to purchase real property in Astoria, Oregon, for long-term investment. In anticipation of that purchase, he obtained a preliminary title report from defendants.
*104 Defendants knowingly omitted mention in that *723 preliminary title report of a first-position trust deed filed on the property and held by Envoy Carob Tree, LLC.[3] Plaintiff completed the purchase of the property in March 2010, for which he paid $125,000. With the purchase of the property, defendants issued to plaintiff a title insurance policy for the property in the amount of $125,000 consistent with the preliminary title report, viz ., the insurance provided coverage against any encumbrances or defects not listed as an exception, such as the Envoy trust deed. After purchasing the property, plaintiff began to renovate a building on the property into three rental units and spent approximately $110,000 in labor and materials toward that effort.[4] Plaintiff stopped work on the renovations, which were near completion, in approximately November 2010.
In July 2010, Envoy initiated nonjudicial foreclosure proceedings against the property, and plaintiff tendered a claim to defendants based on those proceedings. Defendants accepted the claim and retained Cleverly, an in-house lawyer with defendants, to represent plaintiff with respect to Envoy's claim. In October 2010, plaintiff filed a complaint against Envoy in Astoria (the Astoria case), seeking to stop the foreclosure and to quiet title in plaintiff. In May and November 2011, the trial court ruled that Envoy could proceed with the foreclosure and awarded to Envoy an enhanced prevailing party fee and attorney fees because plaintiff's claim against Envoy was made with "no objectively reasonable basis." However, a judgment was not immediately entered in the action. Envoy held the nonjudicial foreclosure sale of the property in January 2012, and purchased the property with a bid of $650,000. After the sale, Envoy notified plaintiff that he needed to vacate the premises, which he did.
Before obtaining a favorable ruling in the Astoria case, Envoy filed a lawsuit against defendants in Multnomah *724 County (the Multnomah County case) in February 2011, asserting claims against defendants for interfering with its trust deed and the foreclosure sale.
In March 2012, just before trial in the Multnomah County case, defendants and Envoy agreed to a global settlement of both the Multnomah County case and the Astoria case. Plaintiff was not included in those discussions. With respect to the Astoria case, Envoy agreed to restore title to the property to plaintiff, free and clear of its trust deed. Cleverly attempted to contact plaintiff and plaintiff's privately retained attorney, Snow, about the settlement in the Astoria case, but neither responded. Plaintiff had decided by this point that he did not want the property back and was only interested in monetary damages. Ultimately, Cleverly signed, on behalf of plaintiff, a stipulated judgment in the Astoria case, which the trial court entered in April 2012, and which restored title to the property to plaintiff and dismissed the case.
Plaintiff subsequently filed this action against defendants asserting claims for fraud, breach of fiduciary duty, and violation of ORICO. With respect to his damages for those claims, plaintiff alleged that he suffered the following injuries:
"(a) [Plaintiff] lost the use of his $125,000 in purchase money for over two years, while title to the Olney Property was encumbered;
"(b) [Plaintiff] lost the use of his $200,000 in material and labor spent improving the Olney Property;
"(c) [Plaintiff] lost economic opportunity because he was prevented by Defendants' fraudulent conduct from completing improvements and selling the Olney Property for a profit;
"(d) [Plaintiff] suffered decline in fair market value of the Olney Property in the *105 20 months the Property was tied up in litigation; and
"(e) [Plaintiff] spent his own money for costs and attorneys fees as a result of the fraud [and] resulting litigation."
Defendants filed a summary judgment motion against all of plaintiff's claims in which they argued, among other *725 things, that plaintiff could not prove that he had been damaged as alleged in the complaint. In response, plaintiff put the following evidence into the summary-judgment record with regard to his damages: (1) plaintiff's deposition testimony that (a) he paid $125,000 for the property, (b) he had submitted documents to defendants that showed that he had spent money improving the property, totaling approximately $110,000, and not $200,000 as alleged,[5] (c) he was 85 percent complete with the renovations, with two of the three units 95 percent complete, when he stopped work in November 2010, (d) he believed that he could have sold the property in a quick flip for $300,000 to $500,000, if he had completed the renovations, which would have cost approximately another $35,000, but he had bought the property for long-term investment, (e) the value of the property after March 2010 "has probably declined and then probably [has] leveled out," and (f) he did not know what he had spent for attorney fees and costs for Snow's representation in the matter; and (2) a short letter from Floyd Holcom, director of Pier 39-Astoria, providing the average rental occupancy and rental rates for weekend vacation stays in their suites. After a hearing, the trial court granted defendants' motion for summary judgment in its entirety and entered a general judgment dismissing all of plaintiff's claims. On appeal, plaintiff contends that he put on sufficient evidence of his damages to create a genuine issue of material fact to preclude summary judgment.
A party is entitled to summary judgment on a claim when the "record fails to show the existence of a triable issue." Jones v. General Motors Corp. , 325 Or. 404, 413, 939 P.2d 608 (1997) (internal quotation marks omitted). Plaintiff, as the party with the burden of persuasion at trial, had the burden of producing evidence on any factual issue that defendants raised in their summary-judgment motion. ORCP 47 C; Two Two v. Fujitec America, Inc. , 355 Or. 319, 324, 325 P.3d 707 (2014). Thus, with respect to the element of damages for each of his claims, plaintiff had "the burden of producing admissible evidence establishing facts that by themselves *726 or by their reasonable inferences could cause a reasonable juror to find" that plaintiff had suffered damages. Chapman v. Mayfield , 263 Or. App. 528, 530, 329 P.3d 12 (2014), aff'd , 358 Or. 196, 361 P.3d 566 (2015) (internal quotation marks omitted).
We address each of plaintiff's claimed damages in turn and conclude that plaintiff failed to present sufficient evidence to raise a genuine issue of material fact that he had suffered damages as a result of defendants' conduct.
Assuming without deciding that plaintiff could properly recover damages for his claims based on a decline in market value of the property or sums paid to Snow, we reject plaintiff's arguments on appeal because the summary-judgment record lacks any evidence from which a reasonable juror could find that plaintiff had suffered a damage amount for either of those claimed categories of damages. See, e.g. , Newell v. Weston , 150 Or. App. 562, 582, 946 P.2d 691 (1997), rev. den. , 327 Or. 317, 966 P.2d 221 (1998) ("[T]he existence and amount of [the] damages must be established with reasonable certainty. If the trier of fact must resort to speculation, conjecture or surmise, a claim of damages will fail." (Citation omitted.) ).
For the same reason, we also reject plaintiff's arguments to the extent they rely on the category of damages alleged in the complaint for "lost economic opportunity because [plaintiff] was prevented by Defendants' fraudulent conduct from completing improvements and selling the Olney Property for a profit." The only evidence in the summary-judgment record was that plaintiff could have completed the renovations for approximately *106 $35,000, but he chose not to, and that he believed that he could then have sold the property for between $300,000 and $500,000, resulting in a profit to him. Plaintiff presented no evidence or supporting testimony about the market to back up his belief as to his lost profit from a sale, which, on this summary-judgment record, amounts to pure speculation on the part of plaintiff. See, e.g. , Willamette Quarries v. Wodtli , 308 Or. 406, 412, 781 P.2d 1196 (1989) ("Lost profits or sales, however, are not proved merely by testimony of unverifiable expectations of profits."); *727 Peterson v. McCavic , 249 Or. App. 343, 354, 277 P.3d 572, rev. den. , 352 Or. 564, 291 P.3d 736 (2012) ("A party seeking to recover lost profits must establish with reasonable certainty the existence and amount of lost profits." (Internal quotation marks and brackets omitted.) ).
We turn to plaintiff's allegation that he was damaged because he lost the use of the money that he had expended on the purchase price and renovations of the property. Between March 2010-when plaintiff purchased the property-and April 2012-when clear title was given to plaintiff-there was a cloud on the title to the property. However, ultimately, plaintiff achieved what he initially set out to accomplish in the Astoria case, which was title to the property free and clear of the Envoy trust deed. Plaintiff argues on appeal that he was harmed by the settlement in that case-and thus by the loss of use of his money-because he had communicated to Cleverly that he no longer wanted the property; he wanted monetary damages. That may be so. However, plaintiff failed to present any evidence of how he was economically harmed by the settlement in the case, which is what is required for plaintiff to obtain the economic damages that he seeks.
Finally, we address plaintiff's claim in his briefing for lost rents from the property. Plaintiff did not allege in his complaint facts from which defendants would have been alerted that he would claim damages from lost rental value of the property. However, in response to defendants' motion for summary judgment, plaintiff alleged that he had raised an issue of fact on damages based on lost rental value. Defendants objected to that argument and evidence on the ground that plaintiff had not alleged those damages in his complaint. On appeal, plaintiff again raises lost rents as a category of damages on which he raised a genuine issue of fact to defeat summary judgment. We reject plaintiff's argument on appeal. A plaintiff cannot be awarded damages based on an unpleaded theory that was not tried by consent. See, e.g. , Rieman v. Swope , 190 Or. App. 516, 522-23, 79 P.3d 399 (2003) (trial court erred in awarding noneconomic damages on plaintiff's claim because plaintiff pleaded only for statutory liquidated damages);
*728 Northwest Marketing Corp. v. Fore-Ward Investments , 173 Or. App. 508, 512-13, 22 P.3d 1230 (2001) (plaintiff was not entitled to damage award based on defendant's failure to pay for completed sales where plaintiff alleged only damages of future lost profits for its breach of contract claim); Belgarde v. Marlia , 117 Or. App. 191, 194, 843 P.2d 981 (1992) (defendants not entitled to damages based on theory not pleaded or tried by consent). Consequently, a plaintiff also cannot defeat a motion for summary judgment by producing evidence that supports only an unpleaded theory of damages to which the defendant objects.
Because we conclude that plaintiff did not present evidence on summary judgment sufficient for a reasonable juror to find that plaintiff suffered damages, we affirm the trial court's grant of summary judgment to defendants.
Affirmed on appeal and cross-appeal.

Consistent with the parties' briefing, which does not distinguish between defendant Ticor Title and defendant Fidelity, we refer only to "defendants" throughout this opinion.

Our disposition on plaintiff's assignments of error four-raising the issue of damages-and five-raising the law of the case doctrine-obviates the need for us to address plaintiff's assignments of error one through three.

Before plaintiff's purchase of the property, defendants had issued title insurance to a bank insuring that the bank held a first-position trust deed. In doing so, defendants had failed to discover the Envoy trust deed, which held a priority position. After issuing that policy, defendants discovered the Envoy trust deed but did not disclose it to plaintiff.

Plaintiff's complaint asserts that he spent $200,000 in that effort. However, plaintiff testified in his deposition that he did not know where the $200,000 number came from.

The documents mentioned by plaintiff and made exhibits to plaintiff's deposition testimony were not made part of the summary-judgment record and were not discussed in any detail in the testimony that was made part of the record.