Argued and submitted November 5, reversed and remanded December 23, 2020, petition for review denied April 22, 2021 (368 Or 37)

# Will McCLUSKY,
*Plaintiff-Appellant,*

*v.*

# CITY OF NORTH BEND,
an incorporated city of the State of Oregon,
*Defendant-Respondent.*

## Coos County Circuit Court
18CV20329; A171089

481 P3d 431

This case arises from cross-motions for summary judgment on plaintiff's claims of unlawful employment discrimination and unlawful retaliation under ORS 659A.199, ORS 659A.203, and ORS 659A.030(1)(f). Plaintiff argues that the trial court erred in granting summary judgment for defendant and denying summary judgment for plaintiff on the issue of whether defendant was plaintiff's "employer." *Held*: ORS 659A.001(4)(a) defines "employer" as one who reserves "the right to control" the means by which an employee performs a service. Nothing in the statute forecloses the possibility that multiple persons or entities may retain the right to control. The undisputed factual record establishes that defendant reserved the right to control plaintiff's work and exercised that control in terminating him.

Reversed and remanded.

Andrew E. Combs, Judge.

Quinn E. Kuranz argued the cause for appellant. Also on the briefs was The Office of Q.E. Kuranz, AAL, LLC.

Alicia M. Wilson argued the cause for respondent. Also on the brief were Tracy M. McGovern and Frohnmayer, Deatherage, Jamieson, Moore, Armosino & McGovern, P.C.

Before Lagesen, Presiding Judge, and James, Judge, and Haselton, Senior Judge.

JAMES, J.

Reversed and remanded.

**JAMES, J.**

This case arises from cross-motions for summary judgment on plaintiff's claims of unlawful employment discrimination and unlawful retaliation under ORS 659A.199, ORS 659A.203, and ORS 659A.030(1)(f). On appeal, plaintiff raises three assignments of error; we write primarily to address his first.[1] There, plaintiff argues that the trial court erred in granting summary judgment for defendant on the issue of whether defendant was the "employer" of plaintiff. "Employer" is defined in ORS 659A.001(4)(a) as "any person who in this state, directly or through an agent, engages or uses the personal service of one or more employees, *reserving the right to control* the means by which such service is or will be performed." (Emphasis added.) Here, the undisputed factual record establishes that defendant reserved the right to control plaintiff's work, and did, in fact, exercise that control in terminating him. Accordingly, we reverse and remand.

The essential facts are not in dispute. Defendant is the City of North Bend, and this litigation arises from North Bend's administrative involvement in plaintiff's employment and termination as Technology Systems Manager for the Coos County Library Service District (CCLSD). The CCLSD is governed by a Master Plan, which was approved by the Coos County commissioners in 1992 and provides that each city retains control of daily library operations and is responsible for administering its own library services. The Master Plan mandates that shared library services (catalogues, databases, information technology services, outreach programs, etc.) are administered by the CCLSD Extended Services Office (ESO).

---

[1] Our disposition on the first assignment of error obviates the need to address the second. In his third assignment of error, plaintiff challenges the trial court ruling that plaintiff waived his patient-based privileges by virtue of alleging noneconomic damages. According to plaintiff, because he only alleged "garden variety" noneconomic damages, he has not waived patient privilege. Plaintiff acknowledges that the rule he advocates, although having a basis in federal law, has not been adopted in Oregon. Whatever the potential merits of the federal approach, we are bound by controlling precedent. *See, e.g.*, *Baker v. English*, 134 Or App 43, 46-47, 984 P2d 505 (1995), *aff'd in part, rev'd in part*, 324 Or 585, 932 P2d 57 (1997) ("There is no dispute that [plaintiff's] records, as they pertained to plaintiff himself, were not privileged, because plaintiff put his own psychological condition into question by claiming emotional distress damages."). Plaintiff has offered no showing that our decisions in this area are plainly wrong.

To manage CCLSD activities, Coos County contracts through an intergovernmental agreement with the City of Coos Bay. Under that agreement, Coos Bay Public Library houses the ESO and employs the ESO Director. The director reports to the CCLSD Advisory Board, who is appointed by the Coos County Board of Commissioners.

In support of the CCLSD, the cities of Coos Bay and North Bend entered into an intergovernmental agreement. Under the terms of that agreement, North Bend agreed to hire the CCLSD Technology Services Manager and house that position in the City of North Bend's public library. The City of Coos Bay reimbursed North Bend for 100 percent of those costs (salary, benefits, and office overhead costs) using the ESO budget. The intergovernmental agreement provided:

"1.   Provide a base of operations for the CCLSD Technology Services Manager in the City's public library.

"2.   Continue[] having the Technology Services Manager as a City employee as it has since December 1, 2011. ***

"3.   Provide the day to day supervision of the Technology Systems Manager in cooperation with the Director the CCLSD's Extended Services. The supervision of this position provided by the City will be pursuant to City personnel policies and the policies of the City library."

Plaintiff was hired by North Bend as CCLSD Technology Systems Manager in the summer of 2015. On August 13, 2015, North Bend sent a letter on its letterhead stating, in relevant part, "This will confirm that you have accepted our offer of employment as Technology Systems Manager for the Coos County Library Service District. The City of North Bend is the fiscal agent." Plaintiff signed personnel documents, agreeing to abide by North Bend's personnel manual and practices.

It is undisputed that plaintiff's employment discrimination claims arise out of conduct primarily involving the Director of CCLSD. It is also not disputed that the Director of CCLSD recommended that North Bend terminate plaintiff. And North Bend did, in fact, terminate plaintiff. On

September 6, 2017, the North Bend City Administrator issued a notice of termination on city letterhead which stated "based on your recent actions, your employment with the City of North Bend has been terminated." As a basis for termination, that letter indicated, among other reasons, "[y]our conduct * * * violates the City of North Bend employment policies and falls well below the expectations that we have for the IT Services Manager position."

On cross-motions for summary judgment before the trial court, the central point of litigation was whether North Bend was plaintiff's employer. North Bend argued that it was merely a "fiscal agent" and that day-to-day supervision of plaintiff fell to the director. The trial court agreed with North Bend, issuing a written opinion in which it explained

> "Yes, the City of North Bend reserved the right to provide 'day-to-day supervision' of plaintiff with the CCLSD, and even evaluated plaintiff's job performance once in two years. However, while being deposed, Plaintiff admitted that he performed all his work for the CCLSD, and that [the CCLSD director] controlled what he did with his time, not the City of North Bend."

The trial court indicated that, although North Bend "provided plaintiff with a salary, benefits, [and] workspace, it was reimbursed by the CCLSD for all such costs associated therewith." Finally, the trial court further explained:

> "Plaintiff was an employee of the City of North Bend, and thus, the City of North Bend was the only entity that had the formal right to fire plaintiff. However, the evidence shows that only the CCLSD had the right to 'decide' to fire plaintiff, and once [the CCLSD Director] made that decision * * *, the City of North Bend carried out the CCLSD's decision by performing the necessary administrative functions on its end to terminate plaintiff's status as its employee."

Following the grant of summary judgment in favor of North Bend, this appeal followed. On appeal the parties largely renew the arguments presented before the trial court. At the outset, we address our standard of review. When, as here, the relevant facts are not in dispute, "we review rulings on cross-motions for summary judgment to determine whether either party is entitled to judgment as a

matter of law." *Busch v. Farmington Centers Beaverton*, 203 Or App 349, 352, 124 P3d 1282 (2005), *rev den*, 341 Or 216 (2006). Whether a party has the legal status of employee, or employer, is a question of law. *Schaff v. Ray's Land & Sea Food Co., Inc.*, 334 Or 94, 101, 45 P3d 936 (2002). Further, whether one possesses a legal "right to control" is a question of law. *HDG Enterprises v. Natl. Council on Comp. Ins.*, 121 Or App 513, 518, 856 P2d 1037 (1993). Finally, to the extent contractual agreements bear on the right to control, as a general rule, the construction of a contract is a question of law. *Timberline Equip. v. St. Paul Fire and Mar. Ins.*, 281 Or 639, 643, 576 P2d 1244 (1978), *May v. Chicago Insurance Co.*, 260 Or 285, 292, 490 P2d 150 (1971).

ORS 659A.001(4)(a) defines employer as "any person who in this state, directly or through an agent, engages or uses the personal service of one or more employees, reserving the right to control the means by which such service is or will be performed." Neither party argues, and nothing in the text or context of the statute indicates, that the legislature sought to utilize a different understanding of "right to control" than appears in various contexts throughout Oregon law and that was reflected in caselaw at the time of the predecessor statute's enactment in Oregon Laws 1969, chapter 618, section 1.[2] *See, e.g.*, *Herff Jones Co. v. Tax Com.*, 247 Or 404, 409, 430 P2d 998 (1967) ("The single most important factor in determining whether an individual is an independent contractor or a servant is the *right to control* or interfere with the manner and method of accomplishing the result—*not the actual exercise of control*." (Emphases added.)); *Jenkins v. AAA Heating & Cooling, Inc.*, 245 Or 382, 386, 421 P2d 971 (1966) ("As long as such right exists, it is of no consequence that the employer may not have exercised it.").

We have identified four nonexclusive factors for consideration in assessing the right to control: "(1) direct evidence of the right to, or the exercise of, control; (2) the method of payment; (3) the furnishing of equipment; and

---

[2] In 2001, the legislature repealed the original version of the statute defining terms for antidiscrimination statutes, ORS 659.010, but reenacted the same relevant text in ORS 659A.104(1)(a). Or Laws 2001, ch 621, § 1.

(4) the right to fire." *Oregon Country Fair v. Natl. Council on Comp. Ins.*, 129 Or App 73, 78, 877 P2d 1207 (1994) (citation omitted).

In this case, a threshold question for applying those factors is whether they can ever point to more than one employer at the same time. Relying on *Ballinger v. Klamath Pacific Corp.*, North Bend argues that they cannot, because an employer "may control its employees 'through an agent,'" and an agent is not an "employer" who may be held liable under ORS chapter 659A. 135 Or App 438, 452, 898 P2d 232 (1995). Although *Ballinger* does distinguish between employers and agents, North Bend's argument is, in essence, an extrapolation from there that, after weighing the various factors for control, only one entity can be an "employer." When multiple persons or entities exert a right to control, North Bend's methodological approach—and the approach taken by the trial court—involves determining who among those entities has the *most* control. North Bend's argument thus frames the right to control as a zero-sum game:there is only ever one employer, and anyone else is, at best, an agent. That is incorrect, and North Bend misunderstands *Ballinger*.

*Ballinger* involved a corporate entity, KP, and its president and majority shareholder, Stewart. As we noted,

> "[a]lthough as a general rule the corporation alone would be the entity that 'reserv[es] the right to control the means by which' employee services will be performed, the trial court decided that Stewart too fell within that definition, apparently because his majority ownership of KP and his principal role in the day-to-day management of the business made him the person who actually had the power to *exercise* that 'right to control.'"

135 Or App at 451 (quoting ORS 659.010(6)) (second brackets and emphasis in *Ballinger*).

We further opined that perhaps the trial court reached its decision in reliance on federal law. On that point, we held:

> "[T]he Title VII definition of 'employer' differs from the ORS chapter 659 definition in one important particular:

the federal definition includes 'agents' to whom the highest level of supervisory authority has been delegated by the employer. In contrast, the state definition appears to *exclude* agents by limiting employer liability to those who 'directly *or through an agent* \*\*\* reserv[e] the right to control' their employees \*\*\*. Under that definition, which implicitly distinguishes between employers and their agents, a corporate employer such as KP may control its employees 'through an agent' such as Stewart, but the agent is not an 'employer.' The trial court erred in holding that Stewart fell within the definition of 'employer,' for purposes of the state unlawful employment practice statutes."

*Id*. at 452 (quoting ORS 659.010(6)) (emphases, first ellipses, and second brackets in *Ballinger*).

*Ballinger* thus stands for the uncontroversial point that corporate entities can act through agents, and when they do, the agents are merely exercising the power the corporate entity holds and are not acting on their own, independent, reservation of the right to control. In that circumstance, ORS 659A.001(4)(a) specifies that it is the one who reserves the right to control—in *Ballinger* that was KP—who is the employer, and not the agent acting on behalf of the person or entity who reserves the right to control. But nothing in *Ballinger* forecloses that a person or entity can share the right to control or invest that power in another person. In short, nothing in *Ballinger* precludes multiple employers, that is, multiple persons or entities with the right to control an employee. The proposition that more than one employer can possess a right to control an employee is well-established. *See, e.g., Restatement of Employment Law* § 1.04(b) (2015) ("An individual is an employee of two or more joint employers if (i) the individual renders services to at least one of the employers and (ii) that employer and the other joint employers each control or supervise such rendering of services as provided in § 1.01(a)(3).").

Here, even if we were to assume *arguendo* that CCLSD possessed a right to control plaintiff, and even if CCLSD actually exercised control over plaintiff, neither point forecloses that North Bend also retained a right to control him. In this case, the undisputed factual record establishes that North Bend hired plaintiff pursuant to a

written contract where it explicitly reserved the right to control plaintiff, and, in fact, assumed the contractual obligation to "[p]rovide the day to day supervision" of plaintiff. As part of that hiring, North Bend required plaintiff to sign and abide by the North Bend policy manual. Finally, North Bend cited as a partial basis for plaintiff's termination that he had failed to abide by North Bend policy. Whether or not CCLSD was also plaintiff's employer—a point on which we offer no opinion on this record—as a matter of law, North Bend reserved the right to control plaintiff and was his employer for purposes of ORS chapter 659A. Accordingly, the trial court erred in granting summary judgment to North Bend and in denying plaintiff's cross-motion.

Reversed and remanded.