No. 231 April 17, 2024 1

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

Will McCLUSKY,
*Plaintiff-Appellant,*

*v.*

CITY OF NORTH BEND,
an Incorporated City of the State of Oregon,
*Defendant-Respondent.*

Coos County Circuit Court
18CV20329; A177073

Andrew E. Combs, Judge.

Argued and submitted April 10, 2023.

Quinn E. Kuranz argued the cause for appellant. Also on the briefs was The Office of Q.E. Kuranz, AAL, LLC.

Tracy M. McGovern argued the cause for respondent. Also on the brief were Travis A. Merritt and Frohnmayer, Deatherage, Jamieson, Moore, Armosino & McGovern, P.C.

Before Ortega, Presiding Judge, Powers, Judge, and Hellman, Judge.

ORTEGA, P. J.

Judgment of dismissal as to Claims 1 and 2 reversed and remanded; otherwise affirmed.

**ORTEGA, P. J.**

This case is before us for the second time on plaintiff's appeal from a judgment dismissing his claims of unlawful employment discrimination and whistleblowing. Plaintiff assigns error to the trial court's grant of summary judgment for defendant City of North Bend as to all four of his claims on various grounds.[1] We conclude that the trial court erred in granting summary judgment for defendant as to Claim 1 (ORS 659A.030(1)(f)), because there is a genuine issue of material fact as to whether plaintiff's protected activity was a substantial factor in defendant's decision to terminate his employment. We also conclude that the trial court erred in granting summary judgment for defendant as to Claim 2 (ORS 659A.199), because plaintiff's conduct constituted a "report" of an alleged violation of state law within the meaning of ORS 659A.199 and there is a genuine issue of material fact as to plaintiff's subjective good faith belief in making that report. We further conclude that, on this record, defendant may be liable as plaintiff's joint employer under ORS 659A.199 and that the coemployer's alleged biased motive may be imputed to defendant under a "cat's paw" theory. Finally, we conclude that the trial court did not err in granting summary judgment for defendant as to Claim 3 (ORS 659A.203(1)(b)(A), (B)) and Claim 4 (ORS 659A.203(1)(d)), because plaintiff failed to produce evidence that he reported illegal or other inappropriate conduct by defendant North Bend. We therefore reverse the judgment of dismissal as to Claims 1 and 2, remand for further proceedings, and otherwise affirm.

---

[1] Plaintiff raises three assignments of error, and only the first identifies the precise legal ruling (the grant of summary judgment for defendant as to his first claim) he challenges on appeal; the second and third identify various "holdings" of the trial court in its summary judgment order, which we understand to challenge the court's grant of summary judgment for defendant as to plaintiff's second, third, and fourth claims. ORAP 5.45(3) ("Each assignment of error must identify precisely the legal, procedural, factual or other ruling that is being challenged."); *see, e.g.*, *Marc Nelson Oil Products, Inc. v. Grim Logging Co.*, 199 Or App 73, 75 n 1, 110 P3d 120, *adh'd to as modified on recons*, 200 Or App 239, 115 P3d 935 (2005) ("Assignments of error * * * are to be directed against rulings by the trial court, not against components of the trial court's reasoning or analysis that underlie that ruling.").

## I.   STANDARD OF REVIEW

The trial court must grant a motion for summary judgment when

> "the pleadings, depositions, affidavits, declarations and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to prevail as a matter of law. *** The adverse party has the burden of producing evidence on any issue raised in the motion as to which the adverse party would have the burden of persuasion at trial."

ORCP 47 C. No genuine issue of material fact exists when "no objectively reasonable juror could return a verdict for the adverse party on the matter that is the subject of the motion for summary judgment." *Id*. We review an order granting summary judgment for errors of law, viewing the facts and all reasonable inferences that may be drawn from them in favor of the nonmoving party, who in this case is plaintiff. *Boyd v. Legacy Health*, 318 Or App 87, 88-89, 507 P2d 715 (2022). We state the facts in accordance with that standard.

## II.   FACTS

We begin with the relevant undisputed facts recounted in our prior opinion:

> "[T]his litigation arises from North Bend's administrative involvement in plaintiff's employment and termination as Technology Systems Manager for the Coos County Library Service District (CCLSD). The CCLSD is governed by a Master Plan, which was approved by the Coos County commissioners in 1992 and provides that each city retains control of daily library operations and is responsible for administering its own library services. The Master Plan mandates that shared library services (catalogues, databases, information technology services, outreach programs, etc.) are administered by the CCLSD Extended Services Office (ESO).
>
> "To manage CCLSD activities, Coos County contracts through an intergovernmental agreement with the City of Coos Bay. Under that agreement, Coos Bay Public Library houses the ESO and employs the ESO Director. The director reports to the CCLSD Advisory Board, who is appointed by the Coos County Board of Commissioners.

> "In support of the CCLSD, the cities of Coos Bay and North Bend entered into an intergovernmental agreement. Under the terms of that agreement, North Bend agreed to hire the CCLSD Technology [Systems] Manager and house that position in the City of North Bend's public library. The City of Coos Bay reimbursed North Bend for 100 percent of those costs (salary, benefits, and office overhead costs) using the ESO budget."

*McClusky v. City of North Bend*, 308 Or App 138, 139-40, 481 P3d 431 (2020), *rev den*, 368 Or 37 (2021) (*McClusky I*).

North Bend hired plaintiff as CCLSD Technology Systems Manager in 2015. North Bend managers and human resources representatives worked with CCLSD employees, including the ESO director, to evaluate and supervise plaintiff. In April 2017, plaintiff received approval from the CCLSD Advisory Board to purchase an email server with budget funds. Minutes from that meeting also show that Jennifer Croft was set to start as the CCLSD ESO director later that month.

In June, Croft sent a memo to Coos County library directors and plaintiff announcing her plan to migrate CCLSD's network to G Suite, a cloud-based service by Google that provides email hosting, among other networking applications. The migration meant abandoning plaintiff's plan to purchase an in-house email server and contracting with third parties to provide services on an ongoing basis. In July, plaintiff attended an IT meeting with Croft, North Bend Library Director Gary Sharp, North Bend Human Resources (HR) Manager and City Recorder Rene Collins, and another IT employee, who openly recorded the meeting. During the meeting, plaintiff expressed concerns to Croft about implementation of the G Suite migration and asked Croft if she had sought the approval of the CCLSD Advisory Board for the migration. Croft responded that she had called the board chair and had sent out emails to inform the board of her plan—which she maintained was within the scope of her authority—but confirmed that "we did not have an official meeting." Plaintiff expressed his view that, "according to the Master Plan and bylaws, this stuff is supposed to go up to the board in an official meeting to be talked about and approved before moving forward on it" and that Croft was

"bypassing *** the laws of the district." Croft proceeded with the plan to migrate to G Suite with an initial launch on July 31.

In mid-August, what the parties refer to as "the Big Book of IT incident" occurred. "The Big Book of IT" is a binder that contains extensive information about CCLSD computer network and IT infrastructure. Croft directed plaintiff to turn over the Big Book of IT so that she could give it to an outside contractor she had hired to perform work on CCLSD systems in the following weeks while plaintiff was out of the office. Plaintiff was working onsite at the Bandon library and initially agreed to drop off the book to Croft when he returned to Coos Bay. Later that afternoon, however, plaintiff sent a text message to Croft, informing her that he would not be handing over the Big Book of IT and that she would need to first seek approval from the CCLSD Advisory Board. Plaintiff then contacted two library directors to inform them of the risks of giving an outside contractor the highest levels of access to CCLSD's servers, service accounts, and patron information. Croft and Collins, the North Bend HR manager, together called plaintiff and told him that, if he did not have the book on Croft's desk by 6:00 p.m., he would face disciplinary action. Plaintiff complied and then went on leave until September 5.

On August 25, plaintiff filed a complaint with the Bureau of Labor and Industries (BOLI) alleging, among other things, that he had complained to Sharp and other library directors about a lack of policies for his position, misappropriation of budget funds, and violations of record retention rules, and that North Bend had retaliated against him by changing his duties, taking control of the IT department, and making changes without communicating them.

On August 29, Croft emailed Sharp her proposed edits on plaintiff's drafted employee performance review. The draft review, dated September 5, meant to be signed by Croft, Sharp, and plaintiff, included a "Work Improvement Plan" in which plaintiff's work would be "closely monitored" for 90 days and required him to demonstrate "immediate and sustained improvement" in specific areas.

On September 1, North Bend received a copy of plaintiff's August 25 BOLI complaint. That same day, North Bend also received a letter from an attorney on behalf of plaintiff providing notice of his BOLI complaint and warning that "any further action taken against [plaintiff would] be considered as retaliation for his legitimate complaints" constituting whistleblowing, even if the BOLI complaint was ultimately deemed unfounded.

When plaintiff returned to work on September 5, he received a "Notice of Potential Termination" signed by North Bend City Administrator Terrence O'Connor, Croft, and Sharp. The notice stated that plaintiff's conduct surrounding the Big Book of IT incident "violates the City of North Bend employment policies and falls well below the expectations that we have for the IT Manager position." Plaintiff submitted a written response, outlining his version of the events surrounding the Big Book of IT incident.

Croft recommended that North Bend terminate plaintiff, and, on September 6, O'Connor issued a "Notice of Termination" on North Bend letterhead, in which he explained that plaintiff had failed to show that he understood how his conduct was improper or provide a reason to believe that he would be able to improve his performance or his strained work relationships. O'Connor verbally informed plaintiff that, because of his BOLI complaint and attorney letter, O'Connor could see that plaintiff was not interested in repairing his work relationships and was only interested in monetary gain.

Plaintiff asserted four claims against defendant North Bend: discrimination under ORS 659A.030(1)(f) (Claim 1), whistleblowing under ORS 659A.199 (Claim 2), and public employee whistleblowing under ORS 659A.203 (1)(b)(A), (B) (Claim 3) and ORS 659A.203(1)(d) (Claim 4). The trial court granted defendant's motion for summary judgment after it concluded that defendant was not plaintiff's "employer." In *McClusky I*, we held that, "as a matter of law, North Bend reserved the right to control plaintiff and was his employer for purposes of ORS chapter 659A." 308 Or App at 145. On remand, defendant again moved for summary judgment on various grounds. The trial court granted

summary judgment in favor of defendant on all four claims and entered a general judgment of dismissal. This appeal followed.

## III.   ANALYSIS

### A.   *Claim 1: Discrimination - ORS 659A.030(1)(f)*

Plaintiff's first claim alleges a violation of ORS 659A.030(1)(f), which provides that "[i]t is an unlawful employment practice *** [f]or any person to discharge, expel or otherwise discriminate against any other person because that other person has opposed any unlawful practice, or because that other person has filed a complaint ***." In granting summary judgment for defendant on that claim, the trial court found that plaintiff's "discharge was the result of his insubordination and unprofessional conduct surrounding the Big Book of IT incident." The court therefore concluded that "no objectively reasonable juror could return a verdict for plaintiff on this claim."[2]

On appeal, plaintiff argues that the trial court erred in granting summary judgment for defendant on this claim because there is a genuine issue of material fact as to causation between his protected activity and termination. Plaintiff points to the evidence that, as of August 29, North Bend's plan was for plaintiff to return to work under a "Work Improvement Plan," that North Bend terminated plaintiff five days after receiving his BOLI complaint and attorney letter, and that O'Connor told plaintiff that his BOLI complaint and attorney letter demonstrated that plaintiff was not interested in repairing his working relationships.

We agree with plaintiff that there is a genuine issue of material fact as to whether his protected activity was a substantial factor in North Bend's decision to terminate

---

[2] The trial court further found that CCLSD and defendant were plaintiff's joint employers but that, to the extent that this claim alleges that North Bend should be held liable for any unlawful acts by CCLSD, "North Bend did not know and should not have known about any such unlawful acts." We do not understand plaintiff to advance a theory as to this claim that defendant should be jointly liable for CCLSD's conduct. Rather, we understand his theory for this claim to be that defendant is directly liable for O'Connor's conduct as defendant's agent. We therefore do not address defendant's argument regarding joint employer liability as to this claim.

his employment and that the trial court erred in granting summary judgment for defendant on that basis. "Proof of a causal connection between protected conduct and a materially adverse action can be established (1) *indirectly*, by showing that the protected activity was followed closely by discriminatory treatment * * * or (2) *directly*, through evidence of retaliatory animus directed against a plaintiff by the defendant." *Meyer v. Oregon Lottery*, 292 Or App 647, 681-82, 426 P3d 89 (2018) (emphases in original; internal quotation marks and citation omitted). "Oregon case law has not identified how 'very close' in time the discriminatory treatment must follow the protected activity such that, by itself, the timing raises an issue of fact regarding causation." *Id.* at 682. But we have concluded that less than one month was sufficient to establish causation. *Medina v. State of Oregon*, 278 Or App 579, 589-90, 377 P3d 626 (2016) (concluding that a reasonable trier of fact could infer from the timing of the disciplinary actions that they were the result of the plaintiff's complaint).

Here, plaintiff produced indirect evidence of a causal connection between his protected conduct and his termination by showing that he was terminated five days after North Bend received his BOLI complaint and attorney letter. Plaintiff also produced direct evidence of a causal connection between his protected conduct and his termination by showing a retaliatory animus directed against plaintiff by defendant: that O'Connor told him that the BOLI complaint and attorney letter demonstrated that plaintiff was not interested in repairing his working relationships, which is one basis the Notice of Termination stated for terminating him.

In urging a different result, defendant first argues that plaintiff's activity was not protected by ORS 659A.030 because his BOLI complaint was not made in good faith. However, defendant did not make that argument to the trial court as a basis for granting summary judgment. We therefore do not address that argument further.

Defendant next argues that plaintiff failed to establish causation because he conceded that he was fired for the Big Book of IT incident. But we understand plaintiff

to have conceded that the Big Book of IT incident is what led Croft to *recommend* that defendant terminate plaintiff. The summary judgment record, however, reflects that O'Connor made the ultimate decision to terminate plaintiff. And whether plaintiff's BOLI complaint and attorney letter were a substantial factor in that decision is a factual question for the jury for the reasons explained above. Plaintiff's concession has no bearing on that conclusion. Thus, the trial court erred in granting summary judgment to defendant on Claim 1.

B.   *Claim 2: Whistleblowing - ORS 659A.199*

Plaintiff's second claim alleges a violation of ORS 659A.199(1), which provides that

> "[i]t is an unlawful employment practice for an employer to discharge, demote, suspend or in any manner discriminate or retaliate against an employee * * * for the reason that the employee has in good faith reported information that the employee believes is evidence of a violation of a state or federal law, rule or regulation."

The trial court granted summary judgment for defendant on that claim for four independent reasons: 1) plaintiff failed to produce evidence that he ever made a "report" of a violation; 2) plaintiff's "report" concerned violation of CCLSD's Master Plan and bylaws, which are not "state or federal law, rule[s] or regulation[s]"; 3) plaintiff's "report" was not made "in good faith"; and 4) North Bend should not be held liable for any unlawful acts by CCLSD because "North Bend did not know and should not have known about any such unlawful acts" and because an imputed motive or "cat's paw" theory did not apply, given that the allegedly biased employee (Croft) was not subordinate to the decision maker (O'Connor) or employed by the same entity.

On appeal, plaintiff argues that the trial court erred in granting summary judgment for defendant on his second claim because there is a genuine issue of fact that he in good faith reported violations of state law to Croft, specifically, that plaintiff told Croft that her admission that she decided to migrate to G Suite without first seeking approval

from the Advisory Board in an official meeting violated public meetings law. *See* ORS 192.610 - 192.705. Plaintiff also argues that the trial court erred in granting summary judgment for defendant on this claim because defendant may be liable for Croft's conduct under three alternative theories: defendant and CCLSD were plaintiff's joint employers, Croft's discriminatory motive may be imputed to defendant under the "cat's paw" doctrine, and North Bend aided and abetted Croft's unlawful discriminatory motive.

We conclude that plaintiff's conduct constituted a "report" of a violation of state law within the meaning of ORS 659A.199 and that there is a genuine issue of material fact as to plaintiff's subjective good faith belief in making that report. We further conclude that, on this record, defendant may be liable for Croft's conduct under a joint employer or an imputed motive theory. We reject without further discussion plaintiff's argument that aiding and abetting is a viable theory on this record because, as he concedes, he failed to plead that theory of liability. *See* ORS 659A.030(1)(g) ("It is an unlawful employment practice * * * [f]or any person, whether an employer or an employee, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter or to attempt to do so."). The trial court therefore erred in granting summary judgment for defendant on this claim.

We begin with whether plaintiff's conduct constituted a "report" of a violation. Our decision in *Bjurstrom v. Oregon Lottery*, 202 Or App 162, 120 P3d 1235 (2005), is instructive. There, we construed the term "disclosure" in the public employee whistleblowing statute, ORS 659A.203(1)(b), to determine whether it protected disclosure within the agency or department, as opposed to the popular conception of a "whistleblower" as one who discloses internal misconduct to an external entity. We first noted that the common meaning of "disclose" is "to make known" or to "open up to general knowledge." *Id.* at 169 (quoting *Webster's Third New Int'l Dictionary* 645 (unabridged ed 2002)). We then observed that the statute protects disclosure "without limitation" and that statutory context "contemplated the possibility of retaliation against employees who voiced their complaints either

within the agency or department, or to others outside."
*Id.* After reviewing legislative history that confirmed our
understanding of the text and context, we concluded that
"disclosures" under ORS 659A.203(1)(b) "include reports of
wrongdoing within an agency or department." *Id.* at 171.
Applying that construction to the plaintiff's conduct in that
case, we held that instances where the plaintiff "voiced his
opinions" about mismanagement and personnel issues in
the workplace "to his coworkers and supervisors" were "dis-
closures" but ultimately were not protected whistleblowing
activity because none concerned "mismanagement." *Id.* at
171-75.[3]

   In *Folz v. ODOT*, 287 Or App 667, 404 P3d 1036
(2017), *rev den*, 362 Or 482 (2018), we applied *Bjurstrom*'s
understanding of "disclosures" and extended it to "reports"
within the meaning of ORS 659A.199.[4] In *Folz*, the plain-
tiff was a human resources manager who supervised and
advised regional human resources managers. *Id.* at 669.
We concluded that the plaintiff's conduct of "expressing her
concerns regarding the propriety of" and "proceeding with"
a proposed plan to discipline an employee to other human
resources decision makers was neither a "report" nor a "dis-
closure" protected by the whistleblowing statutes. *Id.* at
669-74. We reasoned that "the most she ha[d] established is
that she gave advice about an evolving personnel matter as
part of her day-to-day responsibilities as a human resources
professional and that she expressed those opinions to other
participants in that decision-making process *as part of that
process*." *Id.* at 675 (emphasis in original). We emphasized
that, "[a]t the time of those discussions, no decision had been
reached as to how the situation would be handled; that was
the point of involving plaintiff in the discussions." *Id.* at 674.

___

[3] We also rejected the plaintiff's "occasional general references" that his dis-
closures concerned the defendant's violation of "rules" because he did "not identify
with any particularity what statements he is referring to or what rules [defen-
dant] supposedly violated" or "develop any argument on that subject." *Id.* at 173.

[4] Although we did not separately construe the term "report[]" in ORS
659A.199, which was enacted after our decision in *Bjurstrom*, *see* Or Laws 2009,
ch 524, § 2, we understand that term to be a synonym for "disclosure," given
that *Bjurstrom* construed "disclosure" to be a "report" and the plain meaning of
"report" is synonymous with "disclosure." *See Webster's* at 1925 (defining the verb
"report" as "to give an account of : NARRATE, RELATE, TELL").

Returning to the facts of this case, we conclude that plaintiff "reported" wrongdoing within CCLSD for purposes of ORS 659A.199. At the July 2017 IT meeting, which was attended by two of his supervisors as well as another IT employee, plaintiff voiced his opinion that Croft had violated the CCLSD Master Plan and bylaws by failing to seek and gain the Advisory Board's approval at an official public meeting to migrate to G Suite. Although plaintiff also expressed concerns with the propriety of the G Suite migration and proceeding with that plan as part of the process of advising Croft on its implementation, he expressed additional concerns that Croft had made that decision in violation of the CCLSD Master Plan and bylaws. Thus, while the purpose of the IT meeting was to involve plaintiff in the discussion about implementing the G Suite migration, and plaintiff expressed his opinion about the merits of the decision itself and did so as part of his day-to-day responsibilities as an IT Manager, unlike in *Folz*, plaintiff also expressed concern that Croft had failed to follow the necessary procedure to make that decision in the first place—a decision that was already final and did not involve plaintiff. Further, although it was part of plaintiff's job duties to advise Croft on IT matters, it was not part of his job duties to advise Croft on her compliance with the CCLSD Master Plan or bylaws, a point that Croft immediately conveyed in response to his report, by retorting, "And I'm telling you that you're an IT manager." In sum, this case is distinguishable from *Folz* because the alleged violation had already occurred, it concerned a matter that was outside the scope of plaintiff's day-to-day responsibilities as IT Manager, and plaintiff did not voice his opinion about the alleged violation to his supervisors and coworkers as part of the decision-making process.

We next turn to whether plaintiff "in good faith reported information that the employee believes is a violation of a state *** law." "ORS 659A.199 applies a subjective, good faith standard to employees who report *perceived* violations of the law." *Boyd*, 318 Or App at 98 (emphasis added); *see also Hall v. State of Oregon*, 274 Or App 445, 453, 366 P3d 345 (2015) (explaining that ORS 659A.199's express "[r]eference to the employee's belief indicates a subjective, good faith standard"). Thus, "an employee has engaged in

protected activity under that provision if the employee has reported information that [they] subjectively believe[] is a violation of a state or federal law, rule, or regulation and has a good faith basis for that belief." *Boyd*, 318 Or App at 98-99. We look to what the employee knew at the time of the report, and it is irrelevant whether hindsight proves that a violation of law in fact occurred. *Hall*, 274 Or App at 454-55.

Whether an employee held a subjective good faith belief regarding a violation of law at the time of the report is a question of fact. *Id.* ("[W]e conclude that plaintiff presented evidence to create a genuine issue of material fact that he acted with subjective, good faith for purposes of ORS 659A.199."); *Boyd*, 318 Or App at 98-99 (applying that standard). In *Boyd*, the plaintiff reported a nurse's charting errors to his manager. 318 Or App at 98. On appeal, the defendant argued that that report amounted only to a general complaint regarding the nurse's performance and not a "good faith report[ of] information that the employee believe[d was] evidence of a violation of a state or federal law, rule or regulation." *Id.* The plaintiff identified several state administrative rules establishing nursing standards that the nurse's charting errors might violate, and the defendant did not dispute that charting errors would fall short of nursing standards established in those administrative rules. *Id.* at 99. We therefore concluded that the plaintiff's testimony that he had found inaccurate entries in a patient's chart made by the other nurse was sufficient for a factfinder to reasonably conclude that the plaintiff had subjectively believed that the nurse's performance violated state administrative rules and that he had a good faith basis in fact and law for that belief, even if it were to ultimately prove untrue. *Id.* In other words, a plaintiff's report need not identify the specific provisions of law that have been violated, but rather articulate facts that may constitute a violation of law. *Cf. Walker v. Oregon Travel Information Council*, 367 Or 761, 783, 484 P3d 1035 (2021) (explaining that under ORS 659A.203(1) a plaintiff "must set forth facts that would support an objectively reasonable belief that a violation [of law] has occurred," a court makes a "threshold determination that there is a substantial nexus between the complained-of conduct and a law or public policy identified by the court or

the plaintiff," and "the jury then must determine whether the plaintiff actually held such a belief and, if so, whether that belief was objectively reasonable" (internal quotation marks, citation, and emphasis omitted)).

Here, we conclude that plaintiff produced evidence sufficient to create a genuine issue of material fact as to whether he subjectively believed that Croft violated state law at the time of his report and that he had a good faith basis in fact and law for that belief. Plaintiff reported to Croft that she had violated the CCLSD Master Plan and bylaws by contracting with a third party to migrate to G Suite without first seeking and gaining approval from the Advisory Board. The CCLSD Master Plan provides that the Advisory Board has the duty to "[d]etermine and evaluate those shared countywide cooperative services, which are contracted, and the budget for those services," and to "[r]eview contracts for ESO services and recommend approving, denying or changing the contract to the appropriate signing authority." The Master Plan further provides that "[c]ountywide services" include "[p]rovision of all district-wide information technology services and maintenance." And the CCLSD Advisory Board's bylaws expressly provide that "[a]ll Board meetings shall be held in compliance with the Oregon Public Meeting Law as set out in the Oregon Revised Statutes." *See* ORS 192.610 - 192.705. Those statutes reflect state policy that "[t]he Oregon form of government requires an informed public aware of the deliberations and decisions of governing bodies and the information upon which such decisions were made" and express the legislature's "intent *** that decisions of governing bodies be arrived at openly," ORS 192.620, by requiring, among other things, that "[a]ll meetings" of a "governing body of a public body" be open to the public, and by prohibiting a "quorum of a governing body" from "meet[ing] in private for the purpose of deciding on or deliberating toward a decision on any matter," ORS 192.630. *See also* ORS 192.610 (defining terms, including "decision," "deliberation," "governing body," "public body," and "meeting"). From that evidence, a reasonable factfinder could find that plaintiff believed that the Master Plan and bylaws required Croft to seek approval from the Advisory Board to contract with a third party to migrate to

G Suite and to do so at a public meeting that complied with Oregon Public Meeting Law, and that plaintiff believed that Croft had reached the decision to migrate to G Suite by circumventing those legal requirements.

Defendant does not directly respond to plaintiff's contention that he believed that Croft violated public meeting law. Instead, defendant argues that plaintiff could not have had a good faith, subjective belief of an alleged violation of law at the time of the report because alleged violations of the CCLSD Master Plan and bylaws "involv[e] internal administrative matters" and therefore do not constitute "state or federal law, rule[s] or regulation[s]." We are unpersuaded. The CCLSD Master Plan was adopted by the Coos County Board of Commissioners and expressly delegates "limited and defined powers" to the appointed Advisory Board. The Advisory Board is governed by the CCLSD bylaws, which expressly mandate that board meetings comply with state law. We therefore reject defendant's contention that plaintiff could have only believed that he was reporting an alleged violation of mere internal administrative matters.

Finally, we turn to whether defendant may be liable under ORS 659A.199 for Croft's conduct under a joint employer or an imputed motive theory. It is undisputed that plaintiff named only North Bend as a defendant and does not allege that he reported a violation of law by defendant or one of defendant's agents. In defendant's view, that is fatal to plaintiff's claim under ORS 659A.199.

As an initial matter, ORS 659A.199 is not limited to reported violations about the employer. "By its terms, [ORS 659A.199] protects good faith reports of *any* illegal activity and does not require that the reported activity be attributable to the employer." *Burley v. Clackamas County*, 298 Or App 462, 468, 446 P3d 564, *rev den*, 365 Or 721 (2019) (emphasis in original). However, ORS 659A.199 does require that the employer's adverse employment action be taken "because" of or "for the reason that" the employee reported a violation of law. *Ossanna v. Nike, Inc.*, 290 Or App 16, 26-27, 415 P3d 55 (2018), *aff'd*, 365 Or 196, 445 P3d 281 (2019). Here, it is also undisputed that defendant's agent, O'Connor, was the ultimate decisionmaker with regard to plaintiff's

termination and that Croft recommended that O'Connor terminate plaintiff. Thus, the question becomes whether defendant may be liable for terminating plaintiff "for the reason that" he reported an alleged violation of law by Croft and, by extension, CCLSD.

The trial court observed that "Oregon law has yet to address joint employer liability" and therefore looked to federal law under Supreme Court guidance. *See Ossanna v. Nike, Inc.*, 365 Or 196, 204-05, 445 P3d 281 (2019) ("Although federal precedent has no binding authority on this court's interpretation of state law, this court has looked to Title VII precedent for guidance in analyzing claims brought under analogous provisions of ORS chapter 659A."). The court applied the federal common-law agency test adopted by the Ninth Circuit in *EEOC v. Global Horizons, Inc.*, 915 F3d 631 (9th Cir 2019), and found that CCLSD and defendant were plaintiff's joint employers but concluded that defendant was not jointly liable for CCLSD's alleged discriminatory conduct because defendant did not know and should not have known about any such unlawful acts. *See id.* at 641 ("Liability may be imposed for a co-employer's discriminatory conduct only if the defendant employer knew or should have known about the other employer's conduct and failed to undertake prompt corrective measures within its control." (Internal quotation marks and citation omitted.)).

Plaintiff contends that defendant may be liable for Croft's alleged biased recommendation because CCLSD (Croft's employer) and defendant are his joint employers and because he produced evidence to create a genuine issue of material fact that defendant knew or should have known about Croft's alleged bias—that is, that Croft recommended that defendant terminate plaintiff at least in part because plaintiff reported that she allegedly violated the law. Defendant first responds by challenging the trial court's finding that defendant and CCLSD were plaintiff's joint employers. Defendant argues that it cannot be held liable as defendant's joint employer because CCLSD, not defendant, exercised the right to control plaintiff's day-to-day activities.

We reject defendant's argument. In *McClusky I*, we explained that ORS 659A.001(4)(a)'s definition of "employer"

as "any person who in this state, directly or through an agent, engages or uses the personal service of one or more employees, reserving the right to control the means by which such service is or will be performed" reflects the understanding of the "right to control" that "appears in various contexts throughout Oregon law" and that was reflected in case law at the time its predecessor statute was enacted in 1969. 308 Or App at 142. We rejected North Bend's "methodological approach" that "frames the right to control as a zero-sum game: there is only ever one employer, and anyone else is, at best, an agent" as "incorrect." *Id.* at 143. We further observed that "[t]he proposition that more than one employer can possess a right to control an employee is well-established." *Id.* at 144 (citing *Restatement of Employment Law* § 1.04(b) (2015) ("An individual is an employee of two or more joint employers if (i) the individual renders services to at least one of the employers and (ii) that employer and the other joint employers each control or supervise such rendering of services as provided in § 1.01(a)(3).")). Although we ultimately did not decide whether CCLSD was plaintiff's employer, we expressly held that, "as a matter of law, North Bend reserved the right to control plaintiff and was his employer for purposes of ORS chapter 659A." *Id.* at 145. In reaching that conclusion, we squarely rejected the argument that defendant again raises here. *Id.* at 144 ("[E]ven if we were to assume *arguendo* that CCLSD possessed a right to control plaintiff, and even if CCLSD actually exercised control over plaintiff, neither point forecloses that North Bend also retained a right to control him.").

If defendant is shielded from liability under a joint employer theory as a matter of law, it could only be on the grounds that CCLSD is not plaintiff's joint employer. But defendant conceded that point in its answer. And, in any event, the evidence in the summary judgment record shows that CCLSD reserved the right to control plaintiff (and actually exercised control over him): the CCLSD Technology Systems Manager position description provides that "day to day supervision" "is provided by the Director of the North Bend Public Library in cooperation with the Director of CCLSD Extended Services" and that "[t]he CCLSD Director of Extended Services provides general supervision for this

position and provides input to the yearly evaluation" and "coordinates the scheduling of this position." We therefore conclude that CCLSD and defendant were plaintiff's joint employers as a matter of law.

Under federal law, "even if a joint-employment relationship exists, one joint employer is not automatically liable for the actions of the other." *Global Horizons, Inc.*, 915 F3d at 641. We agree with the Ninth Circuit that "[l]iability may be imposed for a co-employer's discriminatory conduct only if the defendant employer knew or should have known about the other employer's conduct and failed to undertake prompt corrective measures within its control." *Id.* (internal quotation marks and citation omitted). In *Global Horizons, Inc.*, the Equal Employment Opportunity Commission brought discrimination charges against fruit growers and a labor contractor under Title VII of the Civil Rights Act of 1964 alleging, among other things, that the fruit growers and labor contractor subjected Thai workers to poor working conditions, substandard living conditions, and unsafe transportation on the basis of their race and national origin. *Id.* at 633. After concluding that the EEOC had plausibly alleged that the fruit growers and the labor contractor were joint employers of the Thai workers, the Ninth Circuit concluded that the allegation that the Thai workers had complained directly to one fruit grower about their substandard working conditions gave rise to a plausible inference that the fruit grower knew or should have known about the labor contractor's discriminatory conduct. *Id.* at 641. And because the allegations established that the fruit grower had ultimate control over those working conditions, they could have taken corrective action but failed to do so. *Id.* at 641-42.

Here, plaintiff produced evidence that defendant's agent, North Bend HR Manager Collins, was present at the July 2017 IT meeting and participated in the discussion in which plaintiff reported Croft's alleged violation of law. Plaintiff also produced evidence that Croft worked closely with defendant's management team (Collins, Sharp, and O'Connor) to provide day to day supervision to plaintiff and to discuss plaintiff's termination, including that Croft made the initial decision with Sharp to pursue plaintiff's

termination. Finally, the draft Work Improvement Plan created by Sharp and edited by Croft specifically notes that plaintiff "has a tendency to incorrectly assume the worst about his colleagues, which often leads him to improperly accuse them of wrongdoing," and "[a]s a result, many of his professional relationships have become strained." We therefore conclude that plaintiff has produced evidence sufficient to create a genuine issue of fact that defendant knew or should have known about Croft's (and by extension CCLSD's) alleged bias due to plaintiff's report of Croft's violation of law, that defendant could have but failed to take corrective action (for example, by not including Croft in the decision to terminate plaintiff), and that Croft's allegedly biased recommendation to terminate plaintiff was a substantial factor in O'Connor's decision to terminate him.

We next address whether defendant may be liable under a "cat's paw" or imputed motive theory, that is, whether Croft's alleged bias may be considered a cause of plaintiff's termination because Croft recommended that defendant terminate plaintiff. The trial court concluded that the imputed motive theory did not apply to this case because Croft was not a subordinate to the decision-maker, O'Connor, and was not employed by defendant.

> "[I]n Oregon statutory employment discrimination and retaliation cases, a plaintiff may assert the 'cat's paw' theory to impute the bias of a supervisor who lacks decision-making authority to the employer's manager and ultimate decision-maker, if the plaintiff can point to evidence that the non-decision-maker influenced or was involved in the adverse employment decision."

*Ossanna*, 365 Or at 209. In *Ossanna*, the court did "not prescribe a particular level of control that a biased employee * * * must exert over the employment decision * * * before allowing the bias to be imputed to the decision-maker." *Id.* The court adopted such a "practical" approach given "a workplace reality" that "[t]he employment setting often consists of multiple layers of networks and relationships; organizational models often do not reflect a simple vertical chain of command; and bias can enter the decision-making process through formal or less formal channels." *Id.* at 210. We have since held that the cat's paw theory is applicable when a coworker, rather

than a supervisor, is the alleged biased employee. *Crosbie v. Asante*, 322 Or App 250, 259, 519 P3d 551 (2022), *rev den*, 370 Or 827 (2023) ("[T]he propriety of a cat's paw instruction hinges on whether a biased employee held influence over the adverse employment decision—either because the employee was authorized by job duty to do so or because the employer negligently allowed such usurpation.").

Given the practical approach the *Ossanna* court adopted and our distillation in *Crosbie* of the core principle for when a cat's paw theory applies, we see no reason why it should not apply when a supervisor for a joint employer is the allegedly biased employee, so long as the plaintiff produces evidence that the allegedly biased employee held influence over the adverse employment decision. Here, the undisputed evidence is that plaintiff's supervisor, Croft, held influence over plaintiff's other supervisor and ultimate decision-maker, O'Connor, in his decision to terminate plaintiff. We therefore conclude that Croft's motive may be imputed to defendant, and that there is a genuine issue of material fact whether Croft's recommendation was a substantial factor in his termination.

C.	*Claims 3 and 4: Public Employer Whistleblowing - ORS 659A.203(1)(b)(A), (1)(b)(B), and (1)(d)*

Plaintiff's third and fourth claims allege violations of ORS 659A.203(1), which provides, in relevant part:

"[I]t is an unlawful employment practice for any public or nonprofit employer to:

"* * * * *

"(b)	Prohibit any employee from disclosing, or take or threaten to take disciplinary action against an employee for the disclosure of any information that the employee reasonably believes is evidence of:

"(A)	A violation of any federal, state or local law, rule or regulation by the public or nonprofit employer;

"(B)	Mismanagement, gross waste of funds or abuse of authority or substantial and specific danger to public health and safety resulting from action of the public or nonprofit employer; [or]

"*****

"(d)   Discourage, restrain, dissuade, coerce, prevent or otherwise interfere with disclosure or discussions described in this section."

The trial court granted summary judgment for defendant on plaintiff's third claim under ORS 659A.203 (1)(b)(A) and (B) on several grounds, only one of which we need address, as it is dispositive: that plaintiff failed to produce evidence to create an issue of fact that it was objectively reasonable for him to believe that North Bend was violating any federal or state law, rule or regulation. Given that plaintiff failed to establish objective reasonableness as to his third claim, the trial court granted summary judgment for defendant on plaintiff's fourth claim under ORS 659A.203 (1)(d), because he failed to produce evidence that North Bend "discouraged, restrained, dissuaded, coerced, prevented or otherwise interfered" with plaintiff's disclosure or discussion of the matters described in ORS 659A.203(1)(b)(A) or (B).

On appeal, plaintiff argues that the definition of "public employer," ORS 659A.200(6), does not limit the report in ORS 659A.203(1)(b) specifically to the plaintiff's employer who takes the adverse action, but rather includes reports of violations of illegal and other inappropriate conduct occurring at "any agency of or political subdivision of the state." Plaintiff contends that the phrase "the public employer" in ORS 659A.203(1)(b)(A) and (B) "is not referring to the plaintiff's employer" who took the alleged adverse employment action, but to "a public employer about which the protected individual complains" and that ORS 659A.203(1) therefore "applies to public employees who complain about perceived violations of law by any agency or political subdivision of the state."

To resolve this question, we turn to our familiar methodology of statutory construction to discern the legislature's intent. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009) (explaining that the "paramount goal" of statutory interpretation is "discerning the legislature's intent"). In doing so here, we begin and end with the text and context

of the provision. *Id.* (holding that text and context "must be given primary weight in the analysis").[5]

As noted, ORS 659A.203(1)(b) prohibits "any public or nonprofit employer" from taking disciplinary action against an employee for disclosing "any information that the employee reasonably believes is evidence of [a] violation of any federal, state or local law, rule or regulation *by the public or nonprofit employer*" or "[m]ismanagement, gross waste of funds or abuse of authority or substantial and specific danger to public health and safety *resulting from action of the public or nonprofit employer*." (Emphases added.) The statute uses the definite article "the" in referring to "the public or nonprofit employer" whose conduct is the subject of the reported violation or inappropriate conduct. "The definite article 'the' often signifies a narrowing intent, a reference to something specific, either known to the reader or listener or uniquely specified." *Hill v. Johnson*, 371 Or 494, 502, 538 P3d 204 (2023) (internal quotation marks and citation omitted). "A referent may be identifiable because it was previously introduced." *Id.* Here, the identifiable referent that was previously introduced is the public or nonprofit employer who takes the adverse employment action.

The context also supports our reading. In comparing the protections afforded by the various whistleblowing statutes in ORS chapter 659A, we have explained that ORS 659A.203(1)(b) "applies strictly to public employers," *Burley*, 298 Or App at 468, and that "the legislature intended that the 'threshold' for the generality of public employee whistleblower claims be different, and more demanding" than other causes of action, including under the common law, *Love v. Polk County Fire District*, 209 Or App 474, 492, 149 P3d 199 (2006). Just as the legislature knows how to employ a less demanding subjective good faith belief standard, as it did in ORS 659A.199, it also knows how to employ broader

---

[5] The parties have not pointed us to any pertinent legislative history, and we have not independently sought such legislative history, as it is unnecessary for us to do so in light of the text of ORS 659A.203(1)(b) and its context. ORS 174.020(3) ("A court may limit its consideration of legislative history to the information that the parties provide to the court."); *see also Baldwin v. Seida*, 297 Or App 67, 76, 441 P3d 720, *rev den*, 365 Or 769 (2019) ("We need not exercise our discretion to seek legislative history, particularly when unnecessary.").

language with regard to the subject of the reported illegal or inappropriate conduct, as it also did in ORS 659A.199. As we observed in *Burley*, ORS 659A.199 reflects the legislature's intent "both to provide protections against retaliation to the employees of private employers" who are not covered by ORS 659A.203, and "to supply additional protections to employees of public employers" by allowing for another cause of action to be available for a broader range of protected conduct than afforded by ORS 659A.203. 298 Or App at 468.

We therefore reject plaintiff's contention that ORS 659A.203 applies to reports of alleged violations or inappropriate conduct by any public or nonprofit employer; by its terms, ORS 659A.203(1)(b) expressly applies only to reports of illegal and other inappropriate conduct by the public or nonprofit employer who takes the adverse employment action.

Returning to this case, we conclude that the trial court correctly granted summary judgment on Claims 3 and 4. As to Claim 3, plaintiff failed to produce evidence that he reported illegal or other inappropriate conduct by defendant North Bend—the employer that plaintiff alleges took the adverse employment action in terminating him. Rather, plaintiff's theory and evidence as to these claims focus on reports of illegal and other inappropriate conduct only by Croft, who was an agent of CCLSD, and plaintiff does not identify any adverse employment action taken by CCLSD.[6] As to Claim 4, because he failed to establish a violation of ORS 659A.203(1)(b)(A) or (B) in his third claim, plaintiff necessarily failed to establish that defendant "[d]iscourage[d], restrain[ed], dissuade[d], coerce[d], prevent[ed] or otherwise interfere[d] with disclosures or discussions described in this section." The trial court did not err in granting summary judgment for defendant on these claims.

Judgment of dismissal as to Claims 1 and 2 reversed and remanded; otherwise affirmed.

---

[6] We do not understand plaintiff to assert as a basis for these claims that Croft's recommendation that defendant terminate plaintiff is an adverse employment decision protected by ORS 659A.203. Plaintiff rather focuses on defendant's decision to terminate him. We therefore do not address it.